No. 22-13153

IN THE

# United States Court of Appeals
# For the Eleventh Circuit

ACTION NISSAN, INC. D/B/A/ UNIVERSAL HYUNDAI &

WILLIAM NERO,

*Plaintiffs-Appellees*,

v.

HYUNDAI MOTOR AMERICA,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Middle District of Florida, Orlando
Division, No. 6:18-cv-380-ORL-78EJK

**OPENING BRIEF FOR APPELLANT HYUNDAI MOTOR AMERICA**

JESSICA L. ELLSWORTH
NATHANIEL A.G. ZELINSKY
EZRA P. LOUVIS
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com

*Counsel for Appellant Hyundai Motor America*

January 6, 2023

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant Hyundai Motor America certifies that the following persons and entities have or may have an interest in the outcome of this case:

Abbot Nicholson PC

Action Nissan, Inc. d/b/a Universal Hyundai

Allen, Jason Todd

Bader, Nicholas A.

Baiardi, Kristen L.

Bass Sox Mercer

Berger, Wendy W. (United States District Judge)

Bertron, James Andrew

Bressler Amery & Ross, P.C.

Chase, Eric L.

Chiappa, Carl J.

Elias, Antonio M.

Ellsworth, Jessica L.

Florida Automobile Dealers Association

Florida Department of Highway Safety and Motor Vehicles

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

Ford, Ryan L.

Gelbord, Brett M.

Genesis Motor America

Hogan Lovells US LLP

Hyundai Motor America

Hyundai Motor Company (LSE: HYUD; KRX: 005380)

Irick, Daniel C. (United States Magistrate Judge)

Kennedy, Ellen S.

Kidd, Embry J. (United States Magistrate Judge)

Killgore, Frank H. (Jr.)

Killgore, Pearlman, Semanie, Denius & Squires, P.A.

Kynoch, Robert R.

Louvis, Ezra P.

Lund, Matthew J.

McDonald Toole Wiggins, PA

Mendoza, Carlos E. (United States District Judge)

Nelson Mullins Riley & Scarborough, LLP

Nero, William

Paretti, Kenneth L.

Quinton & Paretti, P.A.

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

Quinton, A. Edward

Sabbert, Gerd W. (Jr.)

Sanford, Jonathan P.

Schwartz Legal, PLLC

Schwartz, Jonathan Cary

Semanie, Michael A.

Smith, Thomas B. (United States Magistrate Judge)

Sox, Richard

Troutman Pepper Hamilton Sander LLP

Urban Science Applications, Inc.

Vinayak, Nalini

Whitesell, S. Lee

Wiggins, Michael J.

Zelinsky, Nathaniel A.G.

## STATEMENT REGARDING ORAL ARGUMENT

Hyundai Motor America requests oral argument.  This appeal comes from a jury trial that resulted in a $16 million dollar verdict, produced an extensive record, and involves complex legal and factual issues.  Hyundai Motor America respectfully suggests the Court would benefit from argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT .............................................i

TABLE OF CITATIONS .........................................................................v

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ...........................................................7

STATEMENT OF THE ISSUES...............................................................8

STATEMENT OF THE CASE..................................................................9

      A.    Florida Licenses Line-Makes And Protects Dealers........................9

      B.    The 2009 Agreement Grants Nero A Conditional
            Right Of First Refusal To Two Open Points .................................10

      C.    In 2018, Hyundai Decides To Transform "Genesis"
            Into A Separate Luxury Line-Make, But Regulators
            Object ...................................................................................11

      D.    Nero Tries To Exercise His Rights Of First Refusal
            And Quickly Files This Lawsuit ...................................................14

      E.    The District Court Denies HMA Summary Judgment...................14

      F.    The District Court Permits Evidence About The
            Florida DMV, But Prevents HMA From "Implying"
            Impossibility...........................................................................17

      G.    The District Court Instructs The Jury To Disregard
            Evidence Regarding The Florida DMV ........................................18

      H.    The District Court Refuses To Instruct Jurors That All
            Preconditions Must Exist Simultaneously ....................................20

# TABLE OF CONTENTS—Continued

**Page**

I.    The District Court's Instructions Feature Prominently In Nero's Closing Arguments ...........................................................21

J.    The District Court Denies HMA's Post-Trial Motion ..................23

K.    Standard of Review ........................................................................25

SUMMARY OF ARGUMENT .......................................................................26

ARGUMENT ...................................................................................................30

I.    HMA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW—OR AT LEAST A NEW TRIAL—BASED ON THE CONTRACT'S PLAIN LANGUAGE ............................................30

A.    All Three Conditions Precedent Must Exist Simultaneously ................................................................................31

B.    The Three Conditions Precedent Did Not Coexist, And HMA Deserves Judgment As A Matter Of Law ..................35

C.    At Minimum, Because The District Court Failed To Correctly Instruct The Jury, This Court Should Grant A New Trial ....................................................................................42

II.    THE DISTRICT COURT COMMITTED REVERSIBLE ERROR WHEN IT INSTRUCTED JURORS TO DISREGARD EVIDENCE REGARDING THE FLORIDA DMV ................................................................................................47

A.    The Florida DMV's Regulatory Decision Was Central To HMA's Defense ........................................................................47

B.    The District Court Ignored HMA's Argument ...........................50

III.    NERO'S ANTICIPATORY BREACH CLAIM ALSO FAILS ...........................................................................................51

A.    Nero's Anticipatory Breach Claim Is Legally Defective ......................................................................................51

## TABLE OF CONTENTS—Continued

**Page**

    B.    The District Court Misinterpreted Rule 50(b) ...............................53

CONCLUSION .......................................................................................................55

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**Page(s)**

C<small>ASES</small>:

*Abel v. Dubberly*,
210 F.3d 1334 (11th Cir. 2000) ..................................................................25, 38

\* *Allegro at Boynton Beach, L.L.C. v. Pearson*,
287 So. 3d 592 (Fla. Dist. Ct. App. 2019)...................................................51, 52

*Beck v. Lazard Freres & Co.*,
175 F.3d 913 (11th Cir. 1999) .............................................................................43

*BKD Twenty-One Mgmt. Co. v. Delsordo*,
127 So. 3d 527 (Fla. Dist. Ct. App. 2012)....................................................31, 32

*Brink v. Direct Gen. Ins. Co.*,
38 F.4th 917 (11th Cir. 2022) ..............................................................................43

*Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*,
420 F.3d 1146 (11th Cir. 2005) ...........................................................................43

\* *Christopher v. Cutter Lab'ys*,
53 F.3d 1184 (11th Cir. 1995) ......................................................................*passim*

*Dean Wish, LLC v. Lee County*,
326 So. 3d 840 (Fla. Dist. Ct. App. 2021)...........................................................33

*EEOC v. Go Daddy Software, Inc.*,
581 F.3d 951 (9th Cir. 2009) ...............................................................................42

\* *Escribano v. Travis County*,
947 F.3d 265 (5th Cir. 2020) ........................................................................54, 55

*Etienne v. Inter-Cnty. Sec. Corp.*,
173 F.3d 1372 (11th Cir. 1999) ...........................................................................41

*Haelterman v. Haelterman*,
846 So. 2d 1229 (Fla. Dist. Ct. App. 2003).................................................51, 52

\* Per Local Rule 28-1(e), authorities upon which we primarily rely are marked with an asterisk.

## TABLE OF CITATIONS—Continued

**Page(s)**

*Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*,
    411 So. 2d 181 (Fla. 1982) ........................................................51, 52, 53

*Howard v. Walgreen Co.*,
    605 F.3d 1239 (11th Cir. 2010) ..................................................41, 42

*Interline Brands, Inc. v. Chartis Specialty Ins. Co.*,
    749 F.3d 962 (11th Cir. 2014) ...........................................................31

*Koehn v. Delta Outsource Grp., Inc.*,
    939 F.3d 863 (7th Cir. 2019) .............................................................33

*MidlevelU, Inc. v. ACI Info. Grp.*,
    989 F.3d 1205 (11th Cir. 2021) ..................................................25, 26

* *Miller v. Universal City Studios, Inc.*,
    650 F.2d 1365 (5th Cir. 1981) .......................................44, 48, 49, 50

*Murphy v. Murphy*,
    342 So. 3d 799 (Fla. Dist. Ct. App. 2022) ........................................33

*N. Am. Co. for Life & Health Ins. v. Caldwell*,
    55 F.4th 867 (11th Cir. 2022) ...........................................................32

* *Nat'l Indus., Inc. v. Sharon Steel Corp.*,
    781 F.2d 1545 (11th Cir. 1986) .........................................................40

*Nationstar Mortg. Co. v. Levine*,
    216 So. 3d 711 (Fla. Dist. Ct. App. 2017) ........................................31

*Poinciana Hotel of Miami Beach, Inc. v. Kasden*,
    370 So. 2d 399 (Fla. Dist. Ct. App. 1979) ..................................52, 53

* *Quinn v. Sw. Wood Prods., Inc.*,
    597 F.2d 1018 (5th Cir. 1979) .....................................................40, 41

*Retreat at Port of Islands, LLC v. Port of Islands Resort Hotel Condo. Ass'n, Inc.*,
    181 So. 3d 531 (Fla. Dist. Ct. App. 2015) ........................................31

## TABLE OF CITATIONS—Continued

**Page(s)**

*Ruckh v. Salus Rehab., LLC*,
    963 F.3d 1089 (11th Cir. 2020) ........................................................41

*Splitt v. Deltona Corp.*,
    662 F.2d 1142 (5th Cir. Unit B Dec. 1981) ....................................40

*Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*,
    10 F.4th 1255 (11th Cir. 2021) ........................................................32

*United States v. AseraCare, Inc.*,
    938 F.3d 1278 (11th Cir. 2019) ......................................................44

*United States v. Campbell*,
    26 F.4th 860 (11th Cir. 2022) (en banc) ..........................................50

STATUTES:

28 U.S.C. § 1291 ..........................................................................................8

28 U.S.C. § 1331 ..........................................................................................7

28 U.S.C. § 1332 ..........................................................................................7

Fla. Stat. § 320.60(14) ..................................................................................9

Fla. Stat. § 320.61 ........................................................................................9

Fla. Stat. § 320.6415(2)(a) ..........................................................................10

Fla. Stat. § 320.642(2)(a)(2) ........................................................................9

RULES:

Fed. R. Civ. P. 50(b) ............................................................................50, 54

Fed. R. Civ. P. 50 committee's note to 2006 amendment ..................40, 55

M.D. Fla. Local R. 3.01 ..............................................................................50

*Standing Order of Judge Berger on Revised Local Rules* (Jan. 13, 2021),
    https://tinyurl.com/5n86fw8h ..........................................................50

## TABLE OF CITATIONS—Continued

**Page(s)**

OTHER AUTHORITIES:

*Appoint*, Merriam-Webster Dictionary (online ed. 2023) .......................................33

1 Robert P. Mosteller, ed., *McCormick On Evidence* § 59 (8th ed. 2022 update).................................................................................48, 49

\* *Restatement (First) of Contracts* § 318 (1932) .......................................52

\* *Restatement (Second) of Contracts* § 253 (1981)....................................51

\* *Restatement (Second) of Contracts* § 253 cmt. a (1981)........................54

\* *Restatement (Second) of Contracts* § 253 cmt. c (1981).......................52

9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure—Civil* § 2537 (3d ed. 2022 update).................................................55

## INTRODUCTION

This contract case was tried to a jury.  But the District Court refused to instruct the jury about a critical aspect of the contract—and told the parties to argue conflicting structural interpretations to the jury—even though, after trial, the court did not dispute the defendant's interpretation was unambiguously correct.  The District Court also instructed the jury to disregard the defendant's central evidence for why no breach occurred.  These two independent errors produced a $16 million verdict with no basis in law or fact.

After trial, the District Court sought any rationale to preserve an incorrect verdict.  It denied defendant's post-trial motion based on arguments plaintiffs did not make, including a factual theory plaintiffs *disclaimed* before the jury.  It deemed one of defendant's arguments forfeited—when the argument occupied multiple pages of briefing below.  And it propounded a novel interpretation of Rule 50(b) that was rejected by the very precedent it cited.  The defendant deserves judgment as a matter of law.  At a minimum, this Court should grant a new trial.

Here's what happened:  The defendant is Hyundai Motor America ("HMA").  HMA distributes Hyundai automobiles to dealers around the country.  The plaintiffs are William Nero and his "Universal Hyundai" dealership in Orlando, Florida.  Because there is little difference between Nero and his business for this appeal, we refer to them collectively as "Nero."

1

In 2006, Nero sued HMA over advertising assessments and HMA's distribution system.  Three years later, the parties settled.  Nero dropped his lawsuit.  HMA promised various consideration, including $1.1 million.

This appeal concerns Section 10 of the settlement agreement.  That section states that in the event HMA's parent company established a new "luxury motor vehicle line-make" and HMA received "rights of distribution," HMA promised Nero a right of first refusal to two "open points" in eight specific Florida counties.

The contract thus created a right of first refusal subject to three conditions precedent: (1) a new luxury *line-make* must be established; (2) HMA must receive *rights of distribution*; and (3) *open points* must exist in the eight specific Florida counties.  If all of that occurred, HMA was obligated to offer Nero a right of first refusal to open dealerships selling that new luxury line-make in two of the open points.

An "open point" is a technical term in the automobile industry for a defined location where a distributor lacks representation—hence, the "point" is "open"—and wishes to add a dealership.  A "line-make" refers to *all* the various models a dealer may sell pursuant to its franchise agreement with a distributor.

In 2009, when the parties entered into the settlement agreement, Hyundai did not have a luxury line-make.  It had recently launched a luxury automobile named

"Genesis" as part of the "Hyundai" line-make sold by Hyundai dealers. In 2016, Hyundai added two luxury Genesis models under the "Hyundai" line-make.

But customers purchasing luxury automobiles prefer luxury dealerships. To better compete for luxury market share, Hyundai decided to transform Genesis into a separate luxury line-make, sold by a small network of standalone "Genesis" dealers. HMA announced its plans in January 2018. In March 2018, HMA's subsidiary sent existing Hyundai dealers a letter inviting them to indicate interest in establishing an exclusive Genesis dealership.

That plan quickly fell apart. Hyundai's existing dealers protested. They argued that, because Hyundai dealers already sold Genesis vehicles, state laws prevented spinning off "Genesis" into a separate line-make. State regulators agreed. In Florida, the DMV concluded that Hyundai dealers already represented Genesis vehicles. As a result, the DMV refused to license a separate Genesis line-make unless every Hyundai dealer could continue selling Genesis vehicles as a "Genesis" dealer at their existing locations.

Hyundai reluctantly acquiesced to regulators and offered Genesis "dealerships" to all Hyundai dealers across America. In Florida, nearly every Hyundai dealer choose to continue selling Genesis vehicles. As a result, dozens of Hyundai dealers in Florida—and hundreds more across the United States—are dual "Hyundai-Genesis" dealers, far more than the Genesis line-make needs.

Re-enter William Nero.  Immediately after Hyundai announced plans for a new Genesis line-make, Nero tried to invoke his rights of first refusal under Section 10.  Shortly afterward, Nero filed this lawsuit.  It alleges that HMA breached Section 10 by failing to offer rights of first refusal, violated an implied covenant (which requires proving breach, too), or, alternatively, anticipatorily breached Section 10.

HMA has offered a consistent defense.  A key condition precedent to Nero's right of first refusal was never satisfied.  There were never "open points" for the Genesis line-make.  Instead, regulators concluded that because Genesis vehicles were already being sold by Hyundai dealers, every Hyundai dealer should double as a "Genesis" dealer.  As a result, neither HMA nor its Genesis subsidiary wanted or needed additional representation for Genesis vehicles.

Nero has offered shifting theories.  To survive summary judgment, Nero argued the three conditions precedent existed and HMA had breached Section 10 in March 2018, when Nero first filed suit.  At the charge conference, on the penultimate day of trial, Nero shifted course.  He declared breach occurred in *January 2019*, ten months *after* Nero sued HMA.  Before the jury, Nero argued that two key conditions precedent did not arise until October 2018.

HMA immediately spotted the flaw in Nero's novel theory:  Under the contract's plain language, all three conditions needed to exist simultaneously for HMA to owe Nero rights of first refusal to "open points."  But Nero's dates did not

4

match up.  Nero's evidence of "open points" was the March 2018 letter inviting dealers to indicate interest in establishing an exclusive, standalone Genesis dealership.  By May, HMA had abandoned that plan under pressure from state regulators.  Meanwhile, Nero argued that the other two conditions precedent arose in October 2018.

But the District Court refused to decide whether Section 10 required the conditions precedent to exist simultaneously.  Instead, the Court told the parties to argue conflicting interpretations *to lay jurors*.  In his closing, Nero repeatedly invoked the judge's instructions to counter HMA's interpretation of Section 10: "It's not what Judge Berger's going to tell you.  It's not in the jury instructions.  It's not on the verdict form.  If that were true, surely it would make its way into one of those documents, but it's not there."  Doc. 307 at 72.[1]

The District Court's refusal to interpret Section 10 was indefensible.  A court should not task lay jurors with legal analysis.  Nor does the District Court *now* dispute that all three conditions precedent must have actually existed together for Nero to possess rights of first refusal.  Instead, the District Court claimed that all three preconditions coexisted in March 2018.  But that was *not* what Nero argued to the jury.  He conceded two preconditions did not arise until *October* 2018.  HMA deserves judgment as a matter of law based on Nero's theory of this case.  At a

---

[1] Record page references are to the page number in the ECF header.

minimum, this Court should grant a new trial to correct the District Court's failure to instruct the jury about Section 10's meaning.

This Court should also grant HMA a new trial for a second reason. At summary judgment, the District Court ruled against HMA on its affirmative defense of legal impossibility. That affirmative defense asserted that even if the three preconditions had been met, the Florida regulator's decision legally prevented HMA from complying with any obligation it owed to Nero. At trial, the court instructed the jury to *ignore* evidence about Florida regulators because—in the court's words— that evidence might argue or imply a legal impossibility defense.

But the Florida regulatory decision was relevant to *two* arguments. It was relevant to the affirmative defense of impossibility. It was *also* critical to HMA's core factual defense, which was that as a result of the regulators' decisions, open points never existed, and HMA never owed Nero a right of first refusal. The District Court's instruction effectively directed the jury to disregard HMA's *entire case*. Nero understood that. He told jurors that Florida regulators' actions amounted to HMA's "whole case." *Id*. at 78. "*But as you saw on that jury instruction, that's not a viable defense here*." *Id*. (emphasis added).

After trial, the District Court declined to justify its erroneous instruction. Instead, the court accused HMA of forfeiting its challenge to the instruction in post-

trial briefing. But HMA's brief devoted *multiple pages* to this issue. HMA deserves a new trial where jurors are not instructed to ignore HMA's key evidence.

Finally, this Court should grant HMA judgment on Nero's alternative anticipatory breach claim. Florida appellate precedent and leading contract treatises confirm that—as a matter of law—a plaintiff cannot allege anticipatory breach in this context. Here too, the District Court ignored the merits, instead inventing a procedural rationale that Nero never advanced. The court said that because the jury was instructed to skip the moot anticipatory breach question—because it found for Nero on his breach of contract claims—HMA had to file this portion of its post-trial Rule 50(b) motion within 28 days of the jury's discharge rather than 28 days after entry of judgment. But the authority the District Court cited—a recent Fifth Circuit decision—read Rule 50(b) in the opposite way.

## JURISDICTIONAL STATEMENT

Plaintiffs are Florida citizens and raised federal claims. Doc. 84 at 3-5, 26. Defendants are California corporations. *Id.* at 4-5. The District Court exercised jurisdiction under 28 U.S.C. §§ 1331, 1332. The District Court entered final judgment disposing all claims on October 19, 2021. Doc. 314.

On November 16, 2021, HMA moved for judgment as a matter of law and a new trial. Doc. 318. The District Court denied the motion on August 22, 2022. Doc.

338.  On September 19, 2022, HMA filed a notice of appeal.  Doc. 339.  This Court

has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in denying HMA judgment as a matter

of law on Nero's contract claims because no reasonable juror could conclude all

three necessary conditions precedent existed simultaneously, meaning HMA never

owed nor breached a contractual obligation to Nero.

2.      Whether, at a minimum, the District Court erred in denying HMA a

new trial because the court refused to instruct the jury that all three necessary

conditions precedent must exist simultaneously.

3.      Whether the District Court should have granted a new trial because it

improperly instructed jurors to ignore evidence about the Florida DMV that was

critical to HMA's case.

4.      Whether the District Court erred in denying HMA judgment as a matter

of law on Nero's anticipatory breach claim, because a party cannot anticipatorily

breach a unilateral contract or a contract subject to conditions precedent that have

not yet arisen.

## STATEMENT OF THE CASE

### A.    Florida Licenses Line-Makes And Protects Dealers.

The automobile industry is divided into three segments.  *Manufacturers* make vehicles.  *Distributors*—typically owned by manufacturers—enter into franchise agreements with a network of dealers.  *Dealers* sell vehicles to customers.

States heavily regulate these relationships.  In Florida, the Department of Highway Safety and Motor Vehicles—colloquially, the "DMV"—licenses distributors.  *See* Fla. Stat. § 320.61; Doc. 292 at 9.  A license provides the right to distribute a *line-make* in Florida.  Doc. 292 at 12.  A "line-make" means the "multiple brand names or marks" of vehicles that dealers sell under a "single franchise agreement" with a distributor.  Fla. Stat. § 320.60(14).  Distributors receive licenses for each line-make.

As an example of a "line-make," Ford manufactures the Ford F-150 and Mustang.  Dealers sell both vehicles under one franchise agreement.  While F-150s and Mustangs have different names, they are both part of the same Ford line-make. *See* Doc. 277 at 77-78 (Nero's testimony).

Florida law protects dealers in multiple ways.  A distributor may only add an additional dealership if existing dealers "of the same line-make" "are not providing adequate representation."  Fla. Stat. § 320.642(2)(a)(2).  And if a manufacturer wants to establish a new distributor, the manufacturer must offer existing dealers "a

9

new franchise agreement" with that new distributor under the same terms as the dealer's existing franchise agreement with the existing distributor. *Id.* § 320.6415(2)(a).

### B. The 2009 Agreement Grants Nero A Conditional Right Of First Refusal To Two Open Points.

HMA is the wholly-owned distributor of Hyundai Motor Corporation ("HMC"). William Nero is a dealer who owns "Universal Hyundai" in Orlando. Doc. 277 at 56.

In 2006, Nero sued HMA over advertising assessments and HMA's distribution system. Doc. 84-1 at 2. In 2009, the parties entered into a written settlement agreement. *Id.* at 2-10. Under the agreement, Nero dropped his lawsuit, and HMA paid him $1.1 million and promised not to establish Hyundai dealerships near Universal Hyundai for five years. *Id.* at 3-4. For two more years, HMA promised Nero a "right of first refusal on one of any Hyundai dealership new open points" near Universal Hyundai. *Id.* at 5.

An "open point" is a term in the industry for a geographic area in which an automobile line-make lacks representation—hence, a "point" is "open"—but where a manufacturer wants to add a dealership. *See* Doc. 303 at 11-12; Doc. 277 at 58.

This appeal concerns Section 10 of the agreement. Section 10 provided Nero an additional "right of first refusal to be appointed as a dealer for two (2) open points for any new luxury motor vehicle line-make, if any, established by Hyundai Motor

Corporation ('HMC') … and for which HMA or a subsidiary or division … is granted the rights of distribution in the United States."  Doc. 84-1 at 5.   "Nero's rights of first refusal" to open points "shall be in a county of his choosing" among eight specific Florida counties—known as "the Eight-County Area." *Id*. Section 10 remained operative for ten years, through August 2019. *Id*.

The parties agree that Section 10 provided Nero a right of first refusal subject to three conditions precedent: (1) HMC must establish a new luxury *line-make*; (2) *rights of distribution* must be granted to HMA; and (3) *open points* must exist in the Eight-County Area.

There was no guarantee that any of this would happen.  HMC disclaimed any promise or obligation to "establish a new luxury motor vehicle line-make," and HMA disclaimed any promise or obligation to "obtain distribution rights."  *Id*. Should "HMA" "not establish any luxury motor vehicle open points" before August 2019, "then any of Nero's unasserted right of first refusal opportunities shall terminate." *Id*. at 11.

### C.    In 2018, Hyundai Decides To Transform "Genesis" Into A Separate Luxury Line-Make, But Regulators Object.

In 2009, HMC had recently developed a luxury automobile—under the Hyundai line-make—called Genesis.  Doc. 282 at 116.  By 2016, HMC expanded Genesis to include the G80 and G90.  *Id*. at 118-119.  At that time, Genesis remained part of the Hyundai line-make.  Doc. 285 at 24-28; Doc. 294 at 20.  Over 800

11

Hyundai dealers in the United States, including seventeen Hyundai dealers in the Eight-County Area, sold Genesis vehicles.  Doc 282 at 118, 120.

To better compete, Hyundai decided to spin off Genesis into a separate line-make with standalone luxury dealerships.  Consumers prefer to purchase luxury vehicles from a "luxury dealership" with  "luxury accommodations."  *Id*. at 44. Hyundai's initial plan called for 100 standalone Genesis dealers across the entire United States.  Doc. 285 at 8.

To further that plan, HMA created a subsidiary called Genesis Motor America ("GMA") in late 2016.  Doc. 282 at 26.  In December 2017, GMA applied to the Florida DMV for a license to distribute a new Genesis line-make.  Doc. 305-13; Doc. 292 at 16.

On January 26, 2018, HMA and GMA issued a press release announcing their intent to create independent Genesis dealers.  Doc. 305-2.  On March 2, 2018, GMA sent Hyundai dealers a letter inviting them to indicate "interest in applying to become an authorized GMA Genesis dealer."  Doc. 305-7 at 1.

But plans for Genesis went sideways almost immediately.  Existing Hyundai dealers protested.  The dealers argued they were already selling Genesis vehicles, and Hyundai could not take those rights away.  Doc. 177-11.  Multiple states' regulators agreed and denied licenses to distribute a separate Genesis line-make. *See, e.g.*, Doc. 84-14 at 2.

This development forced GMA to alter its strategy. In May 2018, GMA abandoned its plan for a small network of luxury dealers. Doc. 285 at 32. GMA announced it would instead "offer a Genesis franchise to all Hyundai dealers in the United States." *Id.*

Events in Florida followed that course. On July 31, 2018, the Florida DMV denied GMA's initial application to create standalone luxury Genesis dealers. Doc. 305-14; Doc. 292 at 18. The DMV ruled that Genesis "motor vehicles" were "currently distributed to and sold by" Hyundai dealers. Doc. 305-14 at 1. Therefore, according to the Florida DMV, GMA needed to maintain that dealer network and offer all Hyundai dealerships a Genesis franchise at their existing locations. Doc. 305-14 at 1-2; Doc. 285 at 43.

In Florida, nearly every Hyundai dealer—forty-six, to be specific, including all seventeen dealers in the Eight County Area—opted to continue selling Genesis vehicles. Doc. 282 at 109; Doc. 285 at 44-46. This overabundance of Genesis dealers created "a lose-lose proposition." Doc. 285 at 47. Individual Genesis dealers sold too few luxury cars, and customers might not have received that luxury "experience" at an otherwise regular Hyundai dealer location. *Id.* at 48.

Having complied with the Florida DMV's requirement, on September 25, 2018, GMA submitted another application. Doc. 292 at 23. On October 30, 2018, the Florida DMV issued a license for a new Genesis line-make, effective January 3,

2019. *Id*. at 24, 28. As a result, on January 3, nearly every Hyundai dealer in Florida "became" an authorized Genesis dealer. Doc. 282 at 109; Doc. 285 at 44, Doc. 292 at 28-29. At no point did Genesis lack representation, nor did GMA ever want to add additional Genesis dealers.

### D.    Nero Tries To Exercise His Rights Of First Refusal And Quickly Files This Lawsuit.

In the month after GMA announced its intent to create standalone Genesis dealerships on January 26, 2018, Nero sent a few letters invoking Section 10 of the settlement agreement. Doc. 305-3 at 1; Doc. 305-5; Doc. 305-6. Nero was disappointed that GMA did not respond, but did not call or email anyone at the company, despite being a longtime Hyundai dealer. Doc. 277 at 92, 145-146. GMA, which had few employees, was receiving "a lot of letters," Doc. 285 at 13, and Nero's correspondence unfortunately fell through the cracks. Nero's third letter threatened to sue if he did not get a positive response by March 8. Nero filed suit on March 12. Doc. 1.

### E.    The District Court Denies HMA Summary Judgment.

Nero brought three contractual claims against HMA: (1) breach of contract; (2) breach of an implied covenant of good faith, which requires proving breach of

express contractual obligations; and, in the alternative, (3) anticipatory breach.  Doc. 84 at 15-20.[2]

The parties agree that Section 10 creates a right of first refusal subject to those three conditions precedent: (1) HMC must establish a new luxury *line-make*; (2) *rights of distribution* must be granted; (3) *open points* must exist in the Eight-County Area.  But the parties disagree about the precise meaning of "line-make," "open point," and "rights of distribution."  Doc. 303 at 11-12.

HMA's defense has remained consistent:  No open points ever existed.  Doc. 177 at 20-23 (summary judgment); Doc. 277 at 43-49 (opening statements); Doc. 307 at 37 (closing arguments).  And if no open points existed, Nero's rights of first refusal were never triggered.

Originally, GMA planned to establish 100 standalone Genesis dealerships.  But GMA abandoned that plan in May 2018 after regulators sided with Hyundai dealers.  In July 2018, the Florida DMV concluded the Hyundai dealer network already represented Genesis vehicles, and refused to license a new Genesis line-make unless every Hyundai dealership could continue selling Genesis vehicles as a

---

[2] Nero sued GMA, who was not a party to the contract.  The District Court granted judgment for GMA.  Docs. 63, 197, 315.  Nero brought statutory claims, for which the District Court granted judgment to HMA as a matter of law.  Doc. 290 at 86. Nero has not cross-appealed those rulings.

Genesis dealer. Nearly every Florida Hyundai dealer—including *all* dealers in the Eight-County Area—became dual "Hyundai-Genesis" dealers.

HMA or GMA thus never wanted additional representation for Genesis in the Eight-County Area. Because "points" were never "open," a key condition precedent to Nero's right of first refusal was never satisfied.

But the District Court denied HMA's summary judgment motion. At that stage, Nero argued that HMA breached its obligations in March 2018, around the time Nero filed suit. Nero argued that GMA's March 2, 2018 letter inviting dealers to indicate interest in establishing a Genesis franchise proved that open points existed. Doc. 176 at 14; Doc. 186 at 2; Doc. 189 at 3-4. The District Court held that reasonable jurors could agree with Nero. Doc. 197 at 8.

HMA also argued that the other two conditions precedent had not yet been fulfilled in March 2018. The Genesis *line-make* was not established until after the Florida DMV granted GMA a license. When issued, that license granted GMA the right *to distribute* the new-line make. Doc. 177 at 20. For his part, Nero argued that a "line-make" simply means a "brand," and that Section 10 has nothing to do with Florida licensing or distribution in Florida. Doc. 186 at 12.

The District Court declined to interpret these key terms. Instead, the court held that Section 10 possessed latent ambiguities only jurors could resolve. Doc.

197 at 8-9.  At trial, the court would instruct jurors to determine the meaning of "line-make," "rights of distribution," and "open point."  Doc. 303 at 11-12.

The District Court did, however, grant Nero partial summary judgment, and held that HMA could not assert an affirmative defense of impossibility.  HMA had argued that even if HMA owed Nero an obligation to select Genesis open points before other dealers, the Florida DMV's actions rendered HMA's performance impossible and thus excused HMA's failure to perform.  HMA's impossibility defense stemmed from the same facts as its contractual argument that "open points" never existed.  But these were separate legal theories.

The District Court prohibited HMA from asserting the doctrine of impossibility as a defense.  That doctrine applies only where a "supervening event is not foreseeable," Doc. 197 at 17 (internal quotation marks omitted), but according to the District Court, HMA had not presented evidence showing a disputed fact as to the unforeseeability of the DMV's regulatory ruling.  *Id*.

The case proceeded to trial, in which a lay jury would interpret each key term in Section 10 and determine if Nero's rights of first refusal had been triggered and breached.

### F.    The District Court Permits Evidence About The Florida DMV, But Prevents HMA From "Implying" Impossibility.

Before trial, Nero sought to capitalize on the court's grant of partial summary judgment on HMA's affirmative defense of impossibility.  He moved to exclude

17

"evidence or argument which relates solely to impossibility of performance." Doc. 219 at 4. In particular, Nero sought to exclude all evidence that the Florida DMV had "made Defendants offer Genesis franchises to all Hyundai dealers in Florida." *Id*. at 5.

HMA opposed Nero's motion and explained that evidence about regulators' actions was crucial to its defense, separate and apart from the doctrine of impossibility. The Florida DMV's decision also proved "that the conditions precedent to Nero's [right of first refusal] were never triggered" in the first place—the core argument HMA would present to jurors. Doc. 222 at 5.

The District Court denied Nero's motion to exclude this evidence. The court agreed the Florida DMV's decisions "may" "be relevant" to HMA's defense. Doc. 237 at 8. But the court warned HMA that it could not "relitigate the issue of impossibility at trial or" "use the evidence to imply such a defense to the jury." *Id*. The District Court did not explain what it meant to "imply" impossibility. *Id*. The court invited Nero to "renew" "objections at trial," should Nero feel HMA failed "to heed" the District Court's "warning." *Id*.

### G. The District Court Instructs The Jury To Disregard Evidence Regarding The Florida DMV.

At trial, HMA sought to tell its story: The Florida DMV and other regulators concluded that Hyundai dealers were already distributing Genesis vehicles, and required GMA to distribute the new Genesis line-make through the existing Hyundai

dealer network. The DMV's requirement that GMA use the existing Hyundai dealer network meant that Genesis vehicles never lacked representation, GMA certainly never wanted additional representation, and there were no open points for this new line-make that HMA should have offered first to Nero.

The District Court's order prohibiting HMA from implying impossibility became a flashpoint. Nero made, and the District Court sustained, objections on the basis that references to the Florida DMV's decisions implied legal impossibility. *See* Doc. 277 at 150-152; Doc. 282 at 106; Doc. 285 at 36-37, 39-42; *see also* Doc. 292 at 19-20.

On day three of trial, the issue reached a boil. Defense counsel asked a witness why GMA had abandoned plans for standalone Genesis dealerships. Doc. 285 at 36. Moments before, the court had warned counsel to tread carefully. *See id*. at 33-36. But, unexpectedly, the witness said GMA had received "objections from … dealers across the country, dealer associations, and even DMVs. And it made it almost impossible—" *Id*.

Nero objected before the witness could finish. *Id*. Defense counsel explained he had not expected the witness to say "impossible" and suggested directing the jury to disregard the answer. The court did. The court also informed the parties that— at closing—the court would instruct jurors to ignore all evidence of impossibility. *Id*. at 36-37.

The final instruction explained that the court had "already ruled that Defendants cannot rely on the impossibility defense in this case because the actions of the Florida Department of Highway Safety and Motor Vehicles were foreseeable." Doc. 303 at 18.

The court then stated:

> You are instructed to disregard testimony or evidence presented by Defendants that argues or implies that it was legally impossible for them to offer Plaintiffs one or more rights of first refusal under the Agreement as a result of the actions of the Florida Department of Highway Safety and Motor Vehicles. Such evidence, testimony, or argument should not be given any weight in your deliberations in this matter.

*Id.*

HMA requested the court clarify that the DMV's decision "may be considered in deciding whether the conditions" had "occurred"—*i.e.*, whether or when any Genesis open points existed. Doc. 297 at 96. The court refused. *Id.* at 100.

## H. The District Court Refuses To Instruct Jurors That All Preconditions Must Exist Simultaneously.

At summary judgment, Nero argued that all three preconditions had arisen and breached occurred "in early 2018." Doc. 176 at 10. By trial's end, Nero shifted course. In the charge conference, Nero stated that HMA breached the contract *in January 2019*, which was ten months after he filed this lawsuit. Doc. 297 at 62. Before the jury, Nero argued that the Genesis line-make was created and rights of

distribution were granted when the Florida DMV issued GMA a license in October 2018, also many months after he filed suit. Doc. 307 at 14-15, 16.

In response to Nero's new assertion that breach occurred in January 2019, HMA requested the District Court instruct the jury that the contract's language required all three preconditions to exist simultaneously. Doc. 297 at 84-89. As HMA's counsel explained, the jury might find there were open points in March 2018, but no distribution rights to a new line-make at that time. And it might find that there were distribution rights to a new line-make in October 2018 or January 2019, but there were no open points at that time because any possible open points ceased to exist in May 2018. *Id*. at 86.

The Court refused to give HMA's requested instruction. As the Court explained, "I don't read any requirement in Paragraph 10 that" the preconditions "all have to occur at the exact same time." *Id*. "That's a jury question." *Id*.

## I.    The District Court's Instructions Feature Prominently In Nero's Closing Arguments.

The District Court's jury instructions—or lack thereof—became Nero's theme at closing.

Consistent with the Court's view that the parties should convince jurors of the contract's meaning, HMA argued that the three preconditions needed to exist simultaneously for HMA to owe Nero an obligation. Doc. 307 at 43. If jurors believed that open points initially existed in March 2018 but that any desire by HMA

21

for additional representation was extinguished before the other two preconditions arose, HMA had no open points to offer Nero and no obligation.

In the opening lines of his rebuttal, Nero's lawyer responded:

> [T]hat's simply not true. It's not what the contract says. It's not what Judge Berger's going to tell you. It's not in the jury instructions. It's not on the verdict form. If that were true, surely it would make its way into one of those documents, but it's not there.

*Id*. at 72. Nero's counsel returned to the same theme moments later:

> [A]s I pointed out, their arguments that the planets had to align and *all these things had to happen at once*, that's—that's not the law in this case. That's not what the contract says. It's not what the jury instruction says. It's not what the verdict form says. And nothing Judge Berger is going to say contradicts that.

*Id*. at 78-79 (emphasis added).

Meanwhile, HMA's counsel explained the regulators' actions meant that there was never a lack of representation in the dealer network for the Genesis line-make, that no open points existed, and that Nero had no rights of first refusal in these circumstances. *Id*. at 36-37.

Once again, Nero framed his rebuttal around the District Court's instructions. Nero's counsel read the impossibility instruction, and told jurors the instruction foreclosed HMA's entire defense. *Id*. at 73. And his counsel concluded rebuttal as follows:

[HMA's] whole defense in one way, shape, or form is that they couldn't carry through with their original plan.  The decision they had made to establish dealerships in that 100-dealer network, it included areas in that eight-county area.  *That was their whole case*.  We couldn't do it.  *But as you saw on that jury instruction, that's not a viable defense here.*

*Id*. at 78 (emphasis added).

The jury returned a $16 million verdict for Nero.  *Id*. at 100-101.

## J.    The District Court Denies HMA's Post-Trial Motion.

HMA filed a motion for judgment as a matter of law and for a new trial, which the District Court denied.  Doc. 338.  This appeal involves three aspects of HMA's motion.

*First*, HMA argued that all three preconditions—(1) open points, (2) a line-make, and (3) rights of distribution—needed to coexist to give rise to Nero's right of first refusal.  "Plaintiffs' position at trial was that the 'line-make' and 'rights of distribution' preconditions were not satisfied until January 2019," or at least until October 2018.  Doc. 318 at 14.  But the evidence Nero relied on to argue open points pre-dated May 2018.  As a result, the three preconditions had *never* coexisted, which meant HMA deserved judgment as a matter of law.  At a minimum, the Court's failure to properly instruct the jury required a new trial.  *Id*. at 22.

The District Court disagreed with HMA.  The court first held that HMA forfeited its argument for judgment as a matter of law by not raising it in HMA's Rule 50(a) motion.  Doc. 338 at 6-10.  On the merits of both the requests for

judgment and a new trial, the court assumed that "HMA's interpretation of the 2009 Agreement" was correct, and all three preconditions needed to exist simultaneously. *Id*. at 18.  But the court found that HMA did not suffer prejudice.  According to the court, "the great weight of the evidence supports a finding that all three conditions precedent did in fact exist simultaneously on or about March 2018." *Id*.  The Court did not address the fact that Nero *himself* specified October 30, 2018 as the earliest date that two necessary preconditions arose.

*Second*, HMA argued it deserved a new trial because of the District Court's impossibility instruction.  As HMA explained, the District Court "told the jury to ignore evidence that was relevant to the most central issue at trial—whether and when any open points for new luxury line-make dealerships existed."  Doc. 318 at 22.  Once again, Nero's repeated invocation of the instruction demonstrated the extent of the prejudice HMA suffered.  *Id*. at 23.

The District Court did not address HMA's argument.  Instead, the District Court stated that "HMA makes only a conclusory allegation that the instruction did not accurately state the law and fails to cite any legal authority in support of its argument."  Doc. 338 at 17.  The District Court then declared that it had "reviewed the instruction and the arguments advanced by HMA at the charging conference," and was "satisfied that the impossibility instruction properly stated the law."  *Id*.

*Third*, HMA argued that it deserved judgment as a matter of law on Nero's anticipatory breach claim, because a party cannot anticipatorily breach a unilateral obligation.  Doc. 318 at 14-15.  But the District Court once more did not address HMA's argument.  Instead, the court held that because the jury had not answered the question on anticipatory breach, Rule 50(b) required HMA to have filed this aspect of its motion within 28 days of the jury's discharge, rather than within 28 days of the entry of judgment.  Doc. 338 at 4-5.

### K.    Standard of Review.

This Court reviews *de novo* a district court's denial of judgment as a matter of law.  The Court reviews *de novo* a district court's resolution of legal questions. "In considering the sufficiency of the evidence that supports the jury's verdict," this Court reviews "the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party."  *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1214 (11th Cir. 2021) (internal quotation marks omitted). However, the party opposing judgment as a matter of law must present "more than a mere scintilla of evidence" in its favor.  *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000) (per curiam).

The Court reviews the denial of a motion for a new trial for abuse of discretion.  When a defendant seeks a new trial because the jury was incorrectly instructed, however, the Court reviews "jury instructions *de novo* to determine

whether they misstate the law or mislead the jury to the prejudice of the objecting party." *MidlevelU*, 989 F.3d at 1215 (internal quotation marks omitted).  The Court will "reverse and order a new trial" if it is "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations."  *Id*. (same).

## SUMMARY OF ARGUMENT

**I.A.** The District Court erred by punting to the jury a fundamental question of textual interpretation.  Section 10 is unambiguous:  For HMA to owe Nero a right of first refusal, all three conditions precedent must exist at the same time.  *Open points* must exist.  HMA must possess *rights of distribution*.  And the luxury *line-make* must be established.  Even if the District Court thought there was some ambiguity in these terms, there was no ambiguity that all three conditions needed to coexist for HMA to owe Nero an obligation.  These conditions precedent are not abstract concepts.  They are practical requirements that ensure HMA can meaningfully offer open points and Nero can build dealerships for a new luxury line-make.

In contrast, Nero argues HMA owed him a right of first refusal so long as each condition precedent existed at some moment in time over a ten-year period, regardless of how fleeting the moment was and regardless of whether the other conditions precedent were present then too.  That interpretation leads to absurd results:  HMA could not have offered Nero open points that did not actually exist,

or that related to a non-existent line-make, or a line-make for which HMA had no distribution rights.

**B.** Judgment as a matter of law is warranted on Nero's breach of contract and implied covenant claims.  At trial, Nero argued that open points existed in March 2018, when HMA and GMA invited Hyundai dealers to indicate interest in building one of 100 new standalone Genesis dealerships.  But HMA and GMA abandoned that plan and any open points in May 2018.  By contrast, Nero argued the line-make was not established, and rights of distribution were not granted, until *October 2018*.  These dates do not match up.

The District Court's explanation for denying judgment as a matter of law does not pass muster.  The District Court concluded that a reasonable juror could find that all three conditions precedent existed *in March 2018*.  But the trial record did not support that conclusion.  To be sure, that was Nero's theory earlier, when he sought to avoid *summary judgment*.  By trial, however, Nero argued that HMA's breach occurred in October 2018 or January 2019.  Underscoring the District Court's departure from the trial record, even Nero's post-trial briefing did not argue the jury could have found breach in March 2018.

The District Court alternatively held that HMA forfeited this argument by not raising it in HMA's Rule 50(a) motion.  That is wrong three times over.  *First*, HMA raised this argument at the earliest possible opportunity, at the charge conference as

soon as Nero shifted his theory of breach.  This Court has held that is enough to preserve the argument.  *Second*, HMA's argument did not vary so greatly from its Rule 50(a) motion.  This Court does not require a perfect identity of issues.  *Third*, at the very least, the District Court should have applied plain error review.

**C**.  At a minimum, the District Court's refusal to properly instruct the jury about Section 10's meaning requires a new trial.  The prejudice to HMA was palpable:  In his closing arguments, Nero repeatedly stressed the lack of an instruction requiring the conditions precedent to exist simultaneously, and even argued the lack of an instruction meant the court *agreed* with his interpretation of the contract.

The District Court refused to grant a new trial because, it said, the overwhelming evidence showed breach in March 2018.  But *not even Nero thinks* the trial record could support a conclusion breach occurred in March 2018.  For good reason.  That is not what the evidence at trial showed.

**II.A.**  The District Court's impossibility instruction independently requires a new trial.  The instruction directed jurors to ignore evidence about the Florida DMV's actions.  That undermined HMA's entire defense: that the open points precondition did not exist (and certainly not at the same time as any distribution rights to a new line-make) precisely *because* the Florida DMV held that Genesis was already represented in Florida, and required GMA, as a condition of receiving

distribution rights, to allow every Hyundai dealer to continue selling Genesis vehicles as a "Genesis" dealer.  HMA requested the District Court clarify that jurors *could* consider the DMV's actions to determine whether open points existed, but the court refused to do so.  Even Nero saw the court's impossibility instruction for what it was:  He told the jury that the impossibility instruction eviscerated HMA's "whole case."  Doc. 307 at 78.

**B.** The District Court refused to engage with HMA's argument about the impossibility instruction.  Instead, the court said HMA forfeited it.  That is not accurate.  HMA's post-trial brief devoted multiple pages to this issue, and not even Nero argued forfeiture.

**III.A.** If this Court grants relief on the contract claims, this Court should grant HMA judgment on Nero's anticipatory breach claim.  Anticipatory breach applies only to bilateral contracts and can excuse an aggrieved party's future performance.  A promisor cannot anticipatorily breach a unilateral contract.  Nor can a promisor anticipatorily breach a bilateral contract that has become unilateral, which occurs when one party has performed its obligations, and only the other party owes outstanding performance.  Additionally, a plaintiff cannot claim anticipatory breach of a contract subject to conditions precedent that were not fulfilled.

**B.** The District Court's order refused to engage with the merits of HMA's arguments about anticipatory breach.  Instead, the court declared HMA's motion

untimely under Rule 50(b), a procedural argument Nero never advanced. The District Court was wrong. The Fifth Circuit decision on which it relied *rejected* the District Court's interpretation of Rule 50(b).

## ARGUMENT

## I. HMA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW—OR AT LEAST A NEW TRIAL—BASED ON THE CONTRACT'S PLAIN LANGUAGE.

Section 10's meaning is plain: For Nero to have a right of first refusal to two open points for a new luxury line-make, three preconditions set out in that section must exist *at the same time*. There must be: (1) actual open points, (2) for an actual new luxury line-make, (3) as to which HMA's subsidiary actually possesses rights of distribution. It would be nonsensical to interpret the contract to grant Nero a right of first refusal when only a subset of those preconditions are present. In that circumstance, what would Nero's right of first refusal have been for? A right to sell vehicles that could not be distributed? A right to claim an open-point to be a dealer for a non-existent luxury line-make? A right to choose imaginary open-points?

Each result is as absurd as the next. Yet the District Court abdicated its responsibility, and told the parties to argue this key question of contract interpretation to *lay jurors*. That result is as wrong as it sounds. This Court should grant judgment as a matter of law, or at a minimum a new trial.

## A.    All Three Conditions Precedent Must Exist Simultaneously.

Florida courts enforce "the plain meaning of a contractual document when its language is clear and unambiguous." *Retreat at Port of Islands, LLC v. Port of Islands Resort Hotel Condo. Ass'n, Inc.*, 181 So. 3d 531, 533 (Fla. Dist. Ct. App. 2015) (internal quotation marks omitted).  Florida courts apply "the ordinary rules of construction" to divine a contract's meaning.  *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (per curiam).  This means reading the "contract in a way that gives effect to" every provision, and pays attention to "context."  *Retreat*, 181 So. 3d at 533.  It also means construing text to avoid absurd results and adopting "rational" constructions "consistent with reason and probability."  *BKD Twenty-One Mgmt. Co. v. Delsordo*, 127 So. 3d 527, 530 (Fla. Dist. Ct. App. 2012).

After a Florida court applies the rules of construction, "contractual language" may sometimes remain "susceptible to more than one *reasonable* interpretation."  *Id*. In that circumstance, the court may declare the contract "ambiguous."  *Id*.  For certain ambiguities, a factfinder may determine the parties' intent.  *See Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 715 (Fla. Dist. Ct. App. 2017).

The mere fact that parties dispute what a contract means does not make it ambiguous and a jury question.  A "provision is not ambiguous merely because it requires analysis to interpret it."  *Interline Brands*, 749 F.3d at 965 (internal

31

quotation marks omitted); *see Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1264 (11th Cir. 2021) (same). For two reasonable interpretations to exist requires that the terms could be read in two different ways, neither of which is a "fanciful, inconsistent, and absurd" construction "of plain language." *Delsordo*, 127 So. 3d at 530 (internal quotation marks omitted); *see, e.g.*, *N. Am. Co. for Life & Health Ins. v. Caldwell*, 55 F.4th 867 (11th Cir. 2022) (plain meaning of "suicide" encompassed "suicide by cop").

Applying the tools of construction leads to one reasonable interpretation of Section 10: For HMA to owe Nero a right of first refusal to open points, all three preconditions must have existed simultaneously. This is true *regardless* of the precise meaning of each precondition. This makes sense given Section 10's purpose: to allow Nero the chance to build a dealership at open points for a luxury line-make, should any exist. The preconditions reflect meaningful prerequisites to the right of first refusal, not factors chosen at random.

Start with the key sentence: "Nero shall have a right of first refusal to be appointed as a dealer for two (2) open points *for any new luxury motor vehicle line-make*." Doc. 84-1 at 5 (emphasis added). This language does not grant Nero "open points" in the abstract. Instead, Nero has a conditional right to "open points" *for a new luxury line-make*. Thus, the open points only exist if the new luxury line-make also exists.

Meanwhile, the words "to be appointed a dealer" imply that someone can "officially" "name" Nero a dealer once he completes the process of selecting open points. *Appoint*, Merriam-Webster Dictionary (online ed. 2023) ("to name officially"); *see* Doc. 84-1 at 16 (stating that Nero appointment occurs at the end of a process, in which Nero secures land and dealer licensing). That in turns suggests HMA or its subsidiary actually possesses necessary "rights of distribution" that allow Nero to be officially named a dealer for a new luxury line-make.

The same key sentence also states that Nero shall have rights of first refusal if HMA "*is* granted the rights of distribution in the United States." Doc. 84-1 at 5 (emphasis added). That present tense verb "is granted" confirms that HMA must actively possess the right to distribute the new line-make. *See, e.g.*, *Dean Wish, LLC v. Lee County*, 326 So. 3d 840, 846 (Fla. Dist. Ct. App. 2021) ("The simple present tense of 'holds' communicates that the person currently holds legal title to the impacted property."); *Murphy v. Murphy*, 342 So. 3d 799, 804 (Fla. Dist. Ct. App. 2022) (similar); *Koehn v. Delta Outsource Grp., Inc.*, 939 F.3d 863, 865 (7th Cir. 2019) ("After all, the simple present-tense verb 'is' also implies 'current,' doesn't it?"). This shows that Nero only has a right of first refusal if all three conditions precedent actually coexist.

Surrounding context bolsters that commonsense interpretation. The very next paragraph—Section 11—outlines what happens if HMC "establishes a new luxury-

motor vehicle line-make," but an entity other than HMA (or HMA's subsidiary) becomes distributor.  Doc. 84-1 at 6.  In that circumstance, HMA pays Nero $400,000.  *Id*.  Section 11 is clear:  HMA owes Nero money "if and when all of the" preconditions "*are satisfied*."  *Id.* (emphasis added).  That present tense verb "are satisfied" confirms the three preconditions—whether in Section 11 or the parallel preconditions in Section 10—must simultaneously exist for HMA to owe Nero anything.  It is not enough for a precondition to have arisen in the past.  Instead, for HMA to owe Nero an obligation, the conditions precedent must exist simultaneously.

Taking a wider lens confirms that all three conditions precedent must coexist. Section 10 cross-references an addendum titled "Exhibit A."  Doc. 84-1 at 5.  Exhibit A establishes procedures by which HMA notifies Nero of open points; Nero chooses open points; Nero secures real estate and dealer licensing; and Nero executes a dealer agreement.  *Id*. at 11-15.

That articulated process cannot proceed unless each precondition exists.  Nero cannot choose one of the open points for a Genesis dealership if no such open points exist.  Nor can Nero secure his dealer licensing and execute a dealer agreement if HMA lacks the right to distribute the new luxury line-make, or the line-make does not exist.  Thus, like the rest of the agreement, Exhibit A makes sense only if all three preconditions coexist at the time Nero gains his right of first refusal.

By contrast, Nero argued that HMA owed him a right of first refusal as long as each precondition independently existed at some point in time during the decade from 2009 to 2019. *See* Doc. 323 at 17. That interpretation produces bizarre outcomes. It means HMA would have been obligated to offer Nero non-existent open points, or offer a dealership opportunity where HMA lacked rights of distribution, or offer a dealership opportunity to a non-existent luxury line-make. These are hornbook absurdities. But they are precisely the interpretations Nero convinced lay jurors to accept.

Here's the most telling sign Nero's interpretation is absurd: Post trial, the District Court did not dispute HMA's reading of Section 10. The District Court abdicated its responsibility to tell the jury what the contract required.

### B. The Three Conditions Precedent Did Not Coexist, And HMA Deserves Judgment As A Matter Of Law.

A proper interpretation of Section 10 resolves this dispute: No reasonable jury could find that all three preconditions existed at the same time. Nero's dates do not line up. As a result, HMA deserves judgment as a matter of law on Nero's breach of contract and implied covenant claims.

Start with what Nero told the jury: Nero conceded that two preconditions—the "rights and distribution" and "line-make"—were not satisfied until the Florida DMV granted GMA a license in October 2018. Doc. 307 at 15-16. Meanwhile, Nero's evidence of open points was the March 2, 2018 letter inviting Hyundai

35

dealers to indicate their interest in applying for Genesis dealerships. *Id*. at 21, 73; *see, e.g.*, Doc. 280 at 16.

But the evidence also showed that GMA abandoned that plan in May 2018. Doc. 285 at 32. And there were certainly no open points by October 2018. After all, by July, the Florida DMV held that Genesis vehicles were already represented by a dealer network under Florida law—the Hyundai dealer network. Doc. 305-14 at 1. By September, every Hyundai dealer in the Eight-County Area opted to continue selling Genesis vehicles as a "Hyundai-Genesis" dealer. Doc. 285 at 44-46. By October, GMA did not want additional Genesis dealers. There were *already* too many Genesis dealers.

In denying HMA judgment as a matter of law, the District Court rejected Nero's arguments and invented its own rationale for the verdict. According to the court, a "a reasonable jury could have found" that all three preconditions existed *in March 2018*. Doc. 338 at 11.

The trial evidence did not support this post hoc rationale for the verdict. True, *before trial*, Nero pegged March 2018 as the date that mattered. Doc. 197 at 8. But at trial, Nero abandoned his first theory because it did not fit the facts. Doc. 297 at 62. Nor did Nero's post-trial brief argue that breach occurred in March 2018. Instead, Nero doubled down on his erroneous interpretation of Section 10. Doc. 323

at 8, 17-18. The District Court should not have relied on an argument or facts that Nero did not assert at trial and did not argue could sustain the verdict.

Nor does the District Court's timeline fit the trial record. At trial, there was *no* evidence that GMA had been granted "rights of distribution" in March 2018—under any definition of that term. HMC granted GMA contractual rights to distribution in Florida only if GMA received DMV's license to distribute in Florida. *See* Doc. 305-16 at 1 ("*In the event the Application is granted*, HMC hereby authorizes GMA to distribute … Genesis motor vehicles in the State of Florida …." (emphasis added)). That's part of *why* Nero shifted his theory of breach. *See* Doc. 307 at 15-16. And no other evidence at trial established that GMA had received other kinds of distribution rights by March 2018. That meant the trial record indisputably showed that the three preconditions did *not* coexist in March 2018, just as they did not coexist in October 2018 or at any other time.[3]

In concluding that the jury could have found rights of distribution in March 2018, the District Court cited just three pieces of evidence. None can sustain the jury's verdict.

---

[3] The Genesis "line-make" also did not exist in March. Nero initially conflated "line-make" with "brand," and argued the Genesis "brand" existed in March. But given evidence refuting his imprecise definition of "line-make," Nero told jurors the line-make emerged in October with DMV licensing. Doc. 307 at 15.

*First*, the District Court pointed to witness testimony that HMA had "authorized GMA to distribute Genesis Vehicles in the United States *in 2018*, and roughly nineteen state did not require a distributor's license to be issued by the State." Doc. 338 at 12 (emphasis added). But "in 2018" does not mean "in *March* 2018." Moreover, the District Court cited a witness who testified he *did not know* if GMA had distributed vehicles in 2018 (let alone *March* 2018) in states that did not require a license. Doc. 285 at 50-51.

*Second*, the District Court cited a press release from January 2018 as evidence that GMA received rights of distribution. That press release briefly stated that "GMA 'distributes, markets and services Genesis vehicles in the United States.' " Doc. 338 at 12 (quoting Doc. 305-2 at 2). But documents designed for the press are notoriously imprecise. That single cherrypicked sentence is not even "a mere scintilla of evidence," and cannot prevent judgment for HMA. *Abel*, 210 F.3d at 1337. Tellingly, at trial, Nero did not rely on this language at all.

*Third*, under the initial 100-dealer plan, GMA and HMA planned to offer compensation to disappointed dealers who applied—but were not selected for—a standalone Genesis dealership. *See* Doc. 338 at 12 (citing Doc. 305-7 at 4). A *draft* agreement referred to GMA and HMA as "Distributor Parties." Doc. 305-7 at 4. The District Court claimed this contractual definition indicated GMA and HMA already possessed rights of distribution in March 2018. Doc. 338 at 12. That makes

38

no sense.  The draft agreement was never executed for a simple reason:  It was intended for a future that never came.  *See* Doc. 305-7 at 1.  It also did not state that GMA had received rights of distribution.

The bottom line: the District Court was wrong to conclude that reasonable jurors could have found all three preconditions existed simultaneously in March 2018.

In the alternative, the District Court held that HMA had not sufficiently preserved its argument to seek judgment as a matter of law.  Doc. 338 at 5-10.  Rule 50 requires defendants to first move under Rule 50(a) at trial, and renew the motion under Rule 50(b) after trial.  The District Court held that HMA's Rule 50(a) motion had not sufficiently raised this argument.  *Id*.  The District Court's procedural reasoning was error three ways.

*First*, HMA raised its argument at the earliest opportunity.  At the charging conference, Nero pivoted from his prior position and argued that breach occurred in January 2019.  Doc. 297 at 62.  HMA immediately identified the problem:  Nero had "used an exhibit repeatedly suggesting that there were open points in March of 2018"; that initial "plan went out the window and was abandoned by May of 2018"; and if "the jury finds" "the right to distribution and line-make in January of 2019, the open points have to be offered after that."  *Id.* at 86.

39

HMA's arguments at that conference preserved the issue. To alleviate Rule 50(a)'s "harsh" preservation requirement, this Court takes "a liberal view of what constitutes a motion." *Nat'l Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir. 1986). A party may preserve arguments in a challenge to a jury instruction. *See, e.g.*, *id.* at 1549-50; *Splitt v. Deltona Corp.*, 662 F.2d 1142, 1144-45 (5th Cir. Unit B Dec. 1981). HMA did precisely that. Nero "can hardly complain that" he "was lulled into complacency regarding the sufficiency of" his "evidence." *Nat'l Indus.*, 781 F.2d at 1549.

The District Court recognized HMA "expressly raised" this argument at the charging conference. Doc. 338 at 9. The District Court nevertheless faulted HMA for not more clearly insisting that "there was insufficient evidence to send the question to the jury." *Id.* But HMA *did* explain how Nero's theory of breach failed to fit the trial record. The initial Rule 50(a) motion provides plaintiffs notice of factual deficiencies and opportunity "to mend" them. *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979); *see* Fed. R. Civ. P. 50 committee's note to 2006 amendment. HMA provided Nero clear warning of the defects in his argument.

Moreover, blame for any confusion at the charging conference lies with Nero. Nothing "in the record" suggests "an ambush or sandbagging" by HMA. *Nat'l Indus.*, 781 F.2d at 1549. Instead, Nero "sandbagged" and "ambushed" HMA by

waiting until the close of trial to alter his theory of when the breach occurred. *Quinn*, 597 F.2d at 1025. Despite Nero's sudden change in position, HMA quickly identified the flaw.[4]

*Second*, HMA also preserved its argument because HMA's post-trial 50(b) motion did not "vary greatly" from its initial 50(a) motion. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1243 (11th Cir. 2010) (internal quotation marks omitted); *see Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1109 n.12 (11th Cir. 2020). At the close of Nero's case, HMA argued that Nero had failed to present any evidence of open points at any point in time. Doc. 290 at 84-85. HMA's post-trial motion argued that Nero failed to present evidence of open-points *at the time of the alleged breach*. These are not such dissimilar arguments. And again, responsibility for any dissimilarity lies with Nero.

*Third*, at minimum, the District Court should have applied plain error review. *See Howard*, 605 F.3d at 1243. Under that standard, this Court reviews "the record to ascertain if any evidence supports the jury's verdict, irrespective of its sufficiency, or whether there was plain error that resulted in a manifest miscarriage of justice." *Etienne v. Inter-Cnty. Sec. Corp.*, 173 F.3d 1372, 1374 (11th Cir. 1999) (per curiam).

---

[4] The District Court faulted HMA for not arguing "there was insufficient evidence" in response to statements by the court and Nero's counsel. Doc. 338 at 9. But HMA tried and failed to correct the core mistake at the charging conference: that all three conditions must coexist simultaneously. Doc. 297 at 85-89.

HMA identified Nero's legal error, and highlighted the different dates on which the preconditions existed.  At that point, the lack of evidence to support Nero's theory *was* plain.  The fact that breach did not occur in March 2018—as the District Court thought—was so plain even Nero did not argue it.

The District Court acknowledged this Court's precedent requires plain error review "when a party altogether fails to assert a Rule 50(a) motion."  Doc. 338 at 10 (internal quotation marks omitted).  The District Court declared that precedent inapplicable, however, because "HMA made a motion under Rule 50(a) on other grounds."  *Id.*  But this Court has said that plain error applies here, too.  *Howard*, 605 F.3d at 1243; *see EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (same).  The District Court's approach makes no sense:  It rewards parties who do not file any Rule 50(a) motion, but penalizes parties who attempt to comply with Rule 50(a).  That result would be particularly unfair here.  Nero changed his theory of the case on the penultimate day of trial, and HMA quickly identified the error in Nero's new theory.[5]

### C.    At Minimum, Because The District Court Failed To Correctly Instruct The Jury, This Court Should Grant A New Trial.

At a minimum, the District Court's refusal to properly instruct the jury on whether the preconditions in Section 10 had to exist at the same time warrants a new

---

[5] The court suggested HMA did not sufficiently argue "that plain error occurred." Doc. 338 at 10.  HMA preserved this point.  *See* Doc. 329 at 4-5.

trial.  HMA attempted to convince the jury that all three needed "to have existed at the same point in time."  Doc. 307 at 43.  But Nero emphasized over and over that only HMA's arguments, but *not* the District Court's instructions, were to that effect.

A new trial is warranted for the failure to give an instruction "when (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party."  *Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 923 (11th Cir. 2022) (internal quotation marks omitted).  All three factors are easily met.

*First*, HMA's proposed instruction correctly interpreted Section 10.  *See supra* pp. 31-35.

*Second*, the circumstances under which HMA owed an obligation to Nero was the central aspect of Nero's breach and implied covenant claims, which required proof HMA breached an obligation.  *See Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (per curiam); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1152 (11th Cir. 2005).

*Third*, HMA suffered significant prejudice.  The "district court's failure to give" HMA's requested "instruction create[d] a" serious "misimpression."  *Brink*, 38 F.4th at 924.  Whether the three preconditions had to, but did not, coexist "was the heart of" HMA's "defense."  *Christopher v. Cutter Lab'ys*, 53 F.3d 1184, 1194

(11th Cir. 1995).  It was "critical that the court properly guide the jury."  *Id.*  But the court's instructions were severely "lacking."  *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1301 (11th Cir. 2019).  They failed to tell jurors that, as a legal matter, Section 10 required all three conditions to coexist.

Nero's drumbeat of the "unsupported and irrelevant standard in closing argument" confirms "that the jury was improperly guided."  *Cutter Lab'ys*, 53 F.3d at 1195.  Consider how Nero refuted HMA's interpretation of Section 10:  "It's not what Judge Berger's going to tell you.  It's not in the jury instructions.  It's not on the verdict form.  *If that were true, surely it would make its way into one of those documents, but it's not there*."  Doc. 307 at 72 (emphasis added).  And again:  "It's not what the jury instruction says.  It's not what the verdict form says.  And nothing Judge Berger is going to say contradicts that."  *Id.* at 79.

Nero "stressed" his incorrect interpretation of Section 10 because it constituted "the guts of the case."  *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir. 1981) (internal quotation marks omitted).  Nero argued that open points existed on March 2, 2018, but that the line-make was not established and rights of distribution were not granted until October 2018.  Doc. 307 at 14-16.  To square conflicting dates, Nero needed to convince jurors that each precondition could exist at separate times and still give rise to rights of first refusal.

The District Court's reasoning in denying a new trial is reversible error. According to the District Court, no instructions were necessary because the parties argued "their desired interpretation to the jury."  Doc. 338 at 18.  But *the court* instructs jurors on the law.  By failing to do so, the court allowed Nero to argue a legally incorrect interpretation of a complex contractual provision to lay jurors and to imply that the court endorsed Nero's erroneous interpretation.

The District Court also refused to grant a new trial because—it said—"the great weight of the evidence supports a finding that all three conditions precedent did in fact exist simultaneously on or about March 2018." *Id.*

That is demonstrably false.  This Court need look no further than Nero's own closing argument.  He argued that the Genesis line-make was established and rights of distribution were not granted *until October 2018*.  Doc. 307 at 14-16.  HMA's post-trial motion emphasized that Nero's closing argument proved the prejudice HMA suffered.  *See, e.g.*, Doc. 318 at 13-14, 24-25.  But the District Court *never* addressed that point.  Instead, the District Court parroted Nero's summary judgment arguments without regard to whether they matched up with the trial record.

Nero changed his theory at trial for a reason:  A mountain of evidence confirmed that GMA's rights of distribution and the Genesis line-make did not exist until after March 2018.  *See, e.g.*, Doc. 305-16 (HMC-GMA distribution agreement *conditioned on Florida licensing*); Doc. 285 at 29-31, 49, 52, 54 (testimony about

agreement); Doc. 292 at 32-33 (same); Doc. 285 at 23-25 (certificates of origin listed Genesis vehicles as Hyundai line-make on March 5, 2018); Doc. 277 at 155 (Nero agreeing Genesis vehicles were "models of Hyundai" in January 2018); Doc. 280 at 86 (state approval necessary to recognize line-make); Doc. 282 at 121-122 (line-make requires a license); Doc. 285 at 28 (GMA's license pending in March); *id*. at 41 (DMV denied license in July); *id*. at 51 (GMA received license in October); *id*. at 25 (Hyundai was "distributor" of Genesis until December 2018); Doc. 292 at 17-19 (until new license issued, "Genesis" was part of Hyundai line-make); *id*. at 24-28 (Genesis not a line-make until licensing); Doc. 285 at 121-123 (same); Doc. 294 at 17, 20 (same).

One final point demonstrates the District Court's error. The court did not independently analyze the facts to determine "the great weight of the evidence." Doc. 338 at 18. Instead, the court cross referenced its earlier conclusion that sufficient facts existed for "a reasonable jury" to find for Nero. *Id*. at 11. But these are *entirely* separate inquires, under completely different standards. Moreover, when evaluating judgment as a matter of law, the court relied on the assumption that the jury *agreed* with Nero's "interpretations" of the terms "line-make" and "rights of distribution." *Id*. Yet the Court *never* explained how the great weight of the evidence supposedly supported Nero's definitions. The District Court's elision of

HMA's separate requests for different relief betrayed a rush to preserve the verdict, no matter the unfairness.

## II. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR WHEN IT INSTRUCTED JURORS TO DISREGARD EVIDENCE REGARDING THE FLORIDA DMV.

This Court should also grant HMA a new trial to remedy a separate error: The District Court misled jurors when it ordered them "to disregard any testimony or evidence presented by Defendants that argues or implies that it was legally impossible for [HMA] to offer Plaintiffs one or more rights of first refusal" as a "result of" the Florida DMV's actions. Doc. 303 at 18. This instruction—which Nero transformed into another mantra at closing—incorrectly directed the jury to ignore HMA's entire defense.

### A. The Florida DMV's Regulatory Decision Was Central To HMA's Defense.

The Florida DMV's actions played a central role in HMA's defense. HMA's position was that open points never existed because the DMV ruled that the Hyundai dealer network had been representing Genesis vehicles. As a result, the DMV required GMA to make the Genesis dealer network a virtual clone of the Hyundai dealer network. HMA did not want—or need—additional dealers in the Eight-County Area (or anywhere else in Florida). That all meant a key condition precedent to Nero's right of first refusal never arose. *See* Doc. 277 at 35-37, 46-51 (opening statement); Doc. 307 at 45-51 (closing argument). At a minimum, even if there had

47

been open points in March 2018, GMA abandoned its initial plan and any open points in response to state regulators' resistance. Doc. 307 at 49.

Because the Florida DMV's actions involved "the heart and the guts of the case," *Miller*, 650 F.2d at 1372 (internal quotation marks omitted), it was once again "critical that the court properly guide the jury." *Cutter Lab'ys*, 53 F.3d at 1194-95. The District Court did the opposite. Its one-sided impossibility instruction told the jury—in Nero's words—to ignore HMA's "whole case." Doc. 307 at 78.

Nero's description of the instruction's impact was correct. The impossibility instruction swept extremely broadly: It prevented the jury from giving "any weight" to "actions of the Florida Department of Highway Safety and Motor Vehicles." Doc. 303 at 18. It targeted all "testimony or evidence" that "argues or implies" legal impossibility. *Id.* By definition, *all* evidence about the DMV's actions argued or implied impossibility to some degree—in the sense that the evidence was relevant to impossibility. But the same evidence was independently relevant—indeed, critical—to HMA's case that no open points existed. 1 Robert P. Mosteller, ed., *McCormick On Evidence* § 59 (8th ed. 2022 update) ("*McCormick On Evidence*") (evidence may be admissible for one purpose but inadmissible for another).

Worse still, the instruction did not inform jurors how they *could* consider the DMV's actions: to evaluate HMA's argument that open points never existed. HMA specifically requested that clarification. Doc. 297 at 96. But the District Court

refused to explain that "the jury" could "consider the evidence" "for the allowable purpose." *McCormick On Evidence*, *supra*, § 59.  Instead, the court's instruction flatly prohibited the jury from considering key evidence at all.

Nero cannot deny that HMA suffered prejudice.  He repeatedly "reinforced the improper jury instruction" at closing argument.  *Cutter Lab'ys*, 53 F.3d at 1195.  Nero began rebuttal by reading the impossibility instruction verbatim.  Doc. 307 at 73.  In his words, if GMA's March 2018 "plan couldn't come to pass or became impossible to come to pass, that is not a viable defense that you can consider when you deliberate in this matter." *Id*.  Later on, he said this:

> Their whole defense in one way, shape, or form is that they couldn't carry through with their original plan.  The decision they had made to establish dealerships in that 100-dealer network, it included areas in that eight-county area.  That was their whole case.  We couldn't do it.  But as you saw on that jury instruction, that's not a viable defense here.

*Id*. at 78.

 "The fact that counsel considered the faulty instruction" so central demonstrates the court's error "permeated" the entire trial.  *Miller*, 650 F.2d at 1372.  And the prejudice to HMA was all the worse because it came after the court restricted HMA from presenting evidence about the Florida DMV.  *See, e.g.*, Doc. 277 at 150-152; Doc. 282 at 106; Doc. 285 at 36-37, 39-42.

**B.    The District Court Ignored HMA's Argument.**

In its post-trial ruling, the District Court declined to address the merits of HMA's argument.  Instead, it stated that HMA made a "conclusory allegation" and failed to cite any caselaw.  Doc. 338 at 17.

HMA did present a conclusion—after pages of briefing.  *See* Doc. 318 at 18-22.  HMA discussed the relevancy of the Florida DMV's actions and explained how Nero's closing arguments proved the prejudice HMA suffered.  *Id.*  And HMA cited cases where this Court granted new trials under similar circumstances.  *Id.* (citing *Miller*, 650 F.2d at 1367, 1372; *Cutter Lab'ys*, 53 F.3d at 1194, 1195).  This issue was fully briefed.[6]

Nor did Nero think HMA forfeited anything:  Nero devoted a considerable portion of his post-trial brief to the issue, yet never argued forfeiture.  Doc. 323 at 15-16.  Absent "extraordinary circumstances," a district court should not *sua sponte* enforce forfeiture.  *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) (internal quotation marks omitted).  This Court should order a new trial to correct the indefensible impossibility instruction.

---

[6] The court's overzealous application of forfeiture is troubling given its requirement for large font and a twenty-five-page limit.  *See Standing Order of Judge Berger on Revised Local Rules* (Jan. 13, 2021), https://tinyurl.com/5n86fw8h; M.D. Fla. Local R. 3.01.

## III.    NERO'S ANTICIPATORY BREACH CLAIM ALSO FAILS.

The jury's decision on breach mooted Nero's anticipatory breach claim.  But if this Court grants HMA any relief on the other two contract claims, it should grant HMA judgment on this legally-flawed claim.

### A.    Nero's Anticipatory Breach Claim Is Legally Defective.

Nero's anticipatory breach claim fails as a matter of law twice over:

*First*, a party cannot anticipatorily breach a unilateral obligation, such as the conditional obligation HMA owed Nero in 2018.  In general, a party cannot sue for breach before the required time of performance.  The doctrine of anticipatory breach carves out a narrow exception for bilateral contracts involving a mutual exchange of promises.  If the first party repudiates its promise, the anticipatory breach doctrine preemptively excuses the second party from performance and allows for immediate suit.  *See Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*, 411 So. 2d 181, 182 (Fla. 1982); *Restatement (Second) of Contracts* § 253 (1981) ("*Second Restatement*").

Anticipatory breach "does not apply to a unilateral contract" in which only one promisor must perform.  *Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 600 (Fla. Dist. Ct. App. 2019); *see Haelterman v. Haelterman*, 846 So. 2d 1229, 1230 (Fla. Dist. Ct. App. 2003) (same).  Similarly, anticipatory breach does not apply to "a contract originally bilateral that has become unilateral" because of

the "full performance by one party." *Restatement (First) of Contracts* § 318 (1932); *see Second Restatement* § 253 cmt. c (similar); *First Prudential*, 411 So. 2d at 182 (applying *Second Restatement*); *Allegro*, 287 So. 3d at 600 (unilateral option contract becomes bilateral once option exercised).

This makes good sense. When a contract is unilateral, the aggrieved party does not owe performance, and so does not need preemptive excuse from performance.

That rule forecloses Nero's anticipatory breach claim. The settlement agreement began as a bilateral contract. Nero had one obligation: drop his then-existing lawsuit. He did so. Doc. 277 at 15. At that point, the contract became unilateral. Only HMA had obligations. By 2018, HMA had just one obligation left: If three preconditions arose, HMA had to offer Nero right of first refusal. As a result, HMA could not anticipatorily breach the contract.

In a "singularly rare fact pattern," a Florida court once allowed a party to sue for anticipatory breach on a unilateral contract to prevent irreparable injury. *Poinciana Hotel of Miami Beach, Inc. v. Kasden*, 370 So. 2d 399, 402 (Fla. Dist. Ct. App. 1979); *see Haelterman*, 846 So. 2d at 1230. This case is nothing like that one. There, a mortgagor threatened bankruptcy, and a third-in-line mortgagee sought to foreclose immediately. The Florida court allowed the suit to proceed to prevent the mortgagee from otherwise becoming unable to receive effective relief and becoming

"legally responsible for the entire financial obligation under the senior mortgages." *Poinciana*, 370 So. 2d at 402. Outside of that rare circumstance, *Poinciana* confirmed the general rule: In garden variety cases, anticipatory breach does not apply to unilateral contracts. *Id*. at 401.

*Second*, Nero's anticipatory breach claim fails because a promisee cannot claim anticipatory breach for an obligation subject to conditions precedent that never arose during a necessary time period. Otherwise, the promisor can be held liable for breach when the promisor *never* had any obligation to perform. *See First Prudential*, 411 So. 2d at 183 (promisees can recover under anticipatory breach only if "they could have performed" their "conditions precedent"). Indeed, that is what would happen here if Nero could receive damages for anticipatory breach: Despite HMA having *never* owed Nero an obligation, HMA would be held liable for that obligation.

### B.     The District Court Misinterpreted Rule 50(b).

The District Court refused to engage with HMA's legal arguments. *See* Doc. 338 at 4-5. The District Court did not dispute that HMA raised this issue in its Rule 50(a) motion. *See* Doc. 290 at 72-83; Doc. 289-2. Instead, the District Court held that—because the jury had not needed to fill out the section on anticipatory breach— Rule 50(b) required HMA to separately file this portion of its post-trial motion by a different deadline. The District Court was wrong. The Fifth Circuit decision on

which the District Court relied says the opposite. *See Escribano v. Travis County*, 947 F.3d 265, 272 n.7 (5th Cir. 2020).

Federal Rule of Civil Procedure 50(b) establishes two deadlines. First, and normally, parties must file "[n]o later than 28 days *after the entry of judgment*." Fed. R. Civ. P. 50(b) (emphasis added). Second, for "a jury issue not decided by a verdict," the parties must file "no later than 28 days *after the jury was discharged*." *Id*. (emphasis added). Because the entry of judgment typically occurs after jurors' discharge, the first deadline is longer than the second.

In this case, the jury completely "decided" every issue asked of it, and the longer deadline applies. *Id*. In the charge conference, the District Court held that "a completed breach and anticipatory breach" were mutually incompatible findings. Doc. 297 at 62; *see Second Restatement* § 253 cmt. a (if breach occurs, action is treated as breach not anticipatory breach). Thus, if the jury found breach, the anticipatory breach claim became moot, and the verdict form required the jury to skip the question about anticipatory breach. *See* Doc. 304 at 2-3. In this case, by finding breach, the jury "decided" every issue and rendered a complete verdict.

The District Court's lone citation to *Escribano* proves the normal Rule 50(b) deadline applies. Fed. R. Civ. P. 50(b). *Escribano* involved an analogous circumstance. There, a verdict form required a jury to answer a gateway question. Because of how the jury answered that question, the jury did not proceed to

subsequent moot questions. *Escribano*, 947 F.3d at 267. The Fifth Circuit explained that Rule 50(b)'s shorter timeline did not apply because "the jury returned a complete verdict" that "if upheld by the court" "would have fully resolved liability." *Id*. at 272 n.7. The exact same words describe this case.

The commentary to Rule 50(b) confirms the District Court erred. Rule 50(b)'s shorter timeline applies "when the trial ends without a verdict or with a verdict that does not dispose of all issues suitable for resolution by verdict." Fed. R. Civ. P. 50 committee's note to 2006 amendment. But, here, the jury *did* "dispose of all issues suitable for resolution by a verdict." *Id*. In finding for Nero on breach, the jury mooted his anticipatory breach claim. By contrast, the shorter time limit applies where the jury does not return a verdict on some or all claims, and the court declares a mistrial. *See* 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure—Civil* § 2537 (3d ed. 2022 update) (shorter deadline applies "if a verdict was not returned").

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment against HMA. Alternatively, this Court should vacate the judgment, and order a new trial limited to Nero's breach and implied covenant claims.

Respectfully submitted,

<u>/s/ Jessica L. Ellsworth</u>
JESSICA L. ELLSWORTH
NATHANIEL A.G. ZELINSKY
EZRA P. LOUVIS
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com

*Counsel for Appellant Hyundai Motor America*

Dated: January 6, 2023

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,985 words, exclusive of those items listed in Fed. R. App. P. 32(f).

2.    This document complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

/s/ Jessica L. Ellsworth

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2023, I caused a copy of the foregoing to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ Jessica L. Ellsworth