**No. 22-13153**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

ACTION NISSAN, INC. D/B/A UNIVERSAL HYUNDAI &
WILLIAM NERO,

*Plaintiffs-Appellees,*

v.

HYUNDAI MOTOR AMERICA,

*Defendant-Appellant*

_____

Appeal from the United States District Court
for the Middle District of Florida, Orlando
Division, No. 6:18-cv-380-ORL-78EJK

_____

### APPELLEES' ANSWER BRIEF

_____

Nicholas A. Bader
Jason T. Allen
Jeremiah M. Hawkes
Andrew G. Thomas
BASS SOX MERCER
2822 Remington Green Circle
Tallahassee, Florida 32308
850.878.6404
nbader@bsm-law.com.com
jallen@bsm-law.com
jhawkes@bsm-law.com
athomas@bsm-law.com

*Attorneys for Plaintiffs-Appellees Action Nissan, Inc. & William Nero*

March 6, 2023

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Plaintiffs-Appellees Action Nissan Inc., d/b/a Universal Hyundai and William Nero provide the following certificate of interested persons and corporate disclosure statement.

Abbot Nicholson PC

Action Nissan, Inc. d/b/a Universal Hyundai

Allen, Jason Todd

Bader, Nicholas A.

Baiardi, Kristen L.

Bass Sox Mercer

Berger, Wendy W. (United States District Judge)

Bertron, James Andrew

Bressler Amery & Ross, P.C.

Chase, Eric L.

Chiappa, Carl J.

Elias, Antonio M.

Ellsworth, Jessica L.

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

Florida Automobile Dealers Association

Florida Department of Highway Safety and Motor Vehicles

Ford, Ryan L.

Gelbord, Brett M.

Genesis Motor America

Hawkes, Jeremiah M.

Hogan Lovells US LLP

Hyundai Motor America

Hyundai Motor Company (LSE: HYUD; KRX: 005380)

Irick, Daniel C. (United States Magistrate Judge)

Kennedy, Ellen S.

Kidd, Embry J. (United States Magistrate Judge)

Killgore, Frank H. (Jr.)

Killgore, Pearlman, Semanie, Denius & Squires, P.A.

Kynoch, Robert R.

Lund, Matthew J.

McDonald Toole Wiggins, PA

Mendoza, Carlos E. (United States District Judge)

Nelson Mullins Riley & Scarborough, LLP

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

Nero, William

Paretti, Kenneth L.

Quinton & Paretti, P.A.

Quinton, A. Edward

Stabbert, Gerd W. (Jr.)

Sanford, Jonathan P.

Schwartz Legal, PLLC

Schwartz, Jonathan Cary

Semanie, Michael A.

Smith, Thomas B. (United States Magistrate Judge)

Sox, Richard N.

Thomas, Andrew G.

Troutman Pepper Hamilton Sander LLP

Urban Science Applications, Inc.

Vinayak, Nalini

Whitesell, S. Lee

Wiggins, Michael J.

Zelinsky, Nathaniel A.G.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Action Nissan, Inc. and William Nero do not request oral arguments.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ........................................................................v

STATEMENT OF THE CASE...............................................................1

    I.      The Parties, the 2009 Agreement and Nero's Rights of First
             Refusal ................................................................................1

    II.     Regulation Of Automobile Industry.......................................2

    III.   Genesis Spin-Off and Breach of the 2009 Agreement..........................3

    IV.   Nero Attempts to Exercise Rights..................................5

    V.    DHSMV Ruling.............................................................6

    VI.   Summary Judgment..............................................................6

    VII.  Trial and Post-Trial Motions ..................................................7

STANDARD OF REVIEW ....................................................................7

SUMMARY OF THE ARGUMENT ........................................................8

    I.      HMA SEEKS TO IMPROPERLY RELITIGATE THE
             SUMMARY JUDGMENT RULING ON IMPOSSIBILITY..............8

    II.     THE DISTRICT COURT PROPERLY DENIED
             JUDGMENT AS A MATTER OF LAW ON THE
             CONTRACT CLAIMS ...................................................9

    III.   THE DISTRICT COURT DID NOT ABUSE ITS
             DISCRETION IN REFUSING TO INSTRUCT THE JURY
             ON SIMULTANEOUS CONDITIONS PRECEDENT ......................9

    IV.   THE DISTRICT COURT'S CURATIVE INSTRUCTION
             ON IMPOSSIBILITY WAS PROPER ...............................10

    V.    THE DISTRICT COURT PROPERLY DENIED
             JUDGMENT AS A MATTER OF LAW ON
             ANTICIPATORY BREACH ............................................11

ARGUMENT .................................................................................................11

I.    HMA SEEKS TO IMPROPERLY REARGUE THE ISSUE
      OF IMPOSSIBILITY, WHICH WAS DECIDED AT
      SUMMARY JUDGMENT..................................................................11

II.   THE DISTRICT COURT PROPERLY DENIED
      JUDGMENT AS A MATTER OF LAW ON THE
      CONTRACT CLAIMS ......................................................................16

      A.    HMA Waived Claims Not Raised in its Rule 50(a)
            Motion, and The District Court Also Properly Denied
            the Motion on the Merits...........................................................16

      B.    The 2009 Agreement does not Unambiguously Require
            the Three Conditions Precedent to Exist
            Simultaneously..........................................................................20

            i.    The Plain Language does not require
                  Simultaneous Conditions Precedent ...............................21

            ii.   The 2009 Agreement is Ambiguous................................24

      C.    The Record Contains Facts Which Support a
            Conclusion that the Conditions Precedent Coexisted..............26

III.  THE DISTRICT COURT DID NOT ABUSE ITS
      DISCRETION IN REFUSING TO INSTRUCT THE JURY
      ON SIMULTANEOUS CONDITIONS PRECEDENT ....................30

      A.    HMA Failed to Object to Nero's Closing Arguments.............31

      B.    HMA's Proposed Jury Instruction Did Not Correctly
            State the Law..............................................................................34

      C.    HMA Cannot Show That It Suffered Any Prejudicial
            Harm...........................................................................................35

IV.   THE DISTRICT COURT'S CURATIVE INSTRUCTION
      ON IMPOSSIBILITY WAS PROPER ............................................39

      A.    The District Court's Jury Instruction on Impossibility
            Was Proper.................................................................................40

      B.    The District Court Did Not Ignore HMA's Argument.............46

V.    THE DISTRICT COURT PROPERLY DENIED
      JUDGMENT AS A MATTER OF LAW ON
      ANTICIPATORY BREACH ............................................................47

CONCLUSION .......................................................................................52

# <u>TABLE OF CITATIONS</u>

**Page(s)**

**Cases:**

*ADT LLC v. Alarm Prot. Tech. Fla., LLC*,
 646 F. App'x 781 (11th Cir. 2016) ......................................36

*Allegro at Boynton Beach, L.L.C. v. Pearson*,
 287 So. 3d 592 (Fla. Dist. Ct. App. 2019) ..........................50

*Brink v. Direct Gen. Ins. Co.*,
 38 F.4th 917 (11th Cir. 2022) .......................................... 8, 31

*Cephus v. CSX Transp., Inc.*,
 771 F. App'x 883 (11th Cir. 2019) ......................................33

*Christopher v. Cutter*,
 *Lab'ys*, 53 F.3d 1184 (11th Cir. 1995) ...............................46

*Cogar v. Citrus Cnty. Sheriff's Off.*,
 847 F. App'x 549 (11th Cir. 2021) ........................................8

*Dear v. Q Club Hotel, LLC*,
 933 F.3d 1286 (11th Cir. 2019) ................................... *passim*

*Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*,
 21 F.4th 1267 (11th Cir. 2021) ...........................................38

*Gabriel v. Windy Hill Foliage Inc.*,
 No. 21-12901, 2022 WL 2288687 (11th Cir. 2022) ...........47

*Gold Crown Resort Mktg. Inc. v. Phillpotts*,
 272 So. 3d 789 (Fla. 5th DCA 2019) ..................................23

*Haelterman v. Haelterman*,
 846 So. 2d 1229 (Fla. Dist. Ct. App. 2003) ........................51

*Howard v. Walgreen Co.*,
 605 F.3d 1239 (11th Cir. 2010) ..........................................18

*Lupetto, Inc. v. S. Bay Devs. Grp., LLC*,
 302 So. 3d 1061 (Fla. 3d DCA 2020) .................................50

*Maccaferri Gabions, Inc. v. Dynateria Inc.*,
 91 F.3d 1431 (11th Cir. 1996) ............................................21

*Mamani v. Sanchez Bustamante*,
  968 F.3d 1216 (11th Cir. 2020) ...............................................................7

*McGinnis v. Am. Home Mortg. Servicing*, Inc.,
  817 F.3d 1241 (11th Cir. 2016) .............................................................19

*MidlevelU, Inc. v. ACI Info. Grp.*,
  989 F.3d 1205 (11th Cir. 2021) ..........................................................7, 8

*Miller v. Universal City Studios, Inc.*,
  650 F.2d 1365(5th Cir. 1981) ...............................................................46

*Oxford Furniture Companies, Inc. v.
  Drexel Heritage Furnishings, Inc.*,
  984 F.2d 1118 (11th Cir. 1993) .............................................................33

*Poinciana Hotel of Miami Beach, Inc. v. Kasden*,
  370 So. 2d 399 (Fla. Dist. Ct. App. 1979)...........................................51

*Quevedo v.
  Iberia Lineas Aereas de Espana Sociedad Anonima Operadora Co.*,
  811 F. App'x 559 (11th Cir. 2020).......................................................37

*Quinn v. Sw. Wood Prods., Inc.*,
  597 F.2d 1018 (5th Cir. 1979) ..............................................................19

*Sabal Trial Transmission, LLC v.
  18.27 Acres of Land in Levy Cnty.*,
  824 F. App'x 621 (11th Cir. 2020)................................................. 36, 40

*Torres v. First Transit, Inc.*,
  979 F.3d 876 (11th Cir. 2020) ................................................................8

*Tracy v. Fla. Atl. Univ. Bd. of Trustees*,
  980 F.3d 799 (11th Cir. 2020) ..............................................................29

*United States v. Campbell*,
  26 F.4th 860 (11th Cir. 2022) ...............................................................47

*Vasconcelo v. Miami Auto Max, Inc.*,
  981 F.3d 934 (11th Cir. 2020) ..............................................................34

*Wallace v. Mangiaracina*,
  745 F. App'x 356 (11th Cir. 2018)................................................. 33, 45

*Wiedeman v. Canal Ins. Co.*,
  770 F. App'x 497 (11th Cir. 2019) ...................................................................41


**Statutes & Other Authorities:**

Federal Rule of Evidence 403 ...................................................................42

Fla. Stat. § 320.27(2) ...................................................................3

Fla. Stat. § 320.61 ...................................................................3

Fla. Stat. § 320.6415 ................................................................... 3, 6, 12

FRCP 50(a) ................................................................... 16, 17, 18, 19

FRCP 50(b) ................................................................... 17, 19

FRCP 59(a) ...................................................................15

FRCP 59(e) ...................................................................15

Restatement (First) of Contracts § 318 (1932) ...................................................................49

## STATEMENT OF THE CASE

### I.    The Parties, the 2009 Agreement and Nero's Rights of First Refusal

This appeal deals with a jury's finding that an automobile manufacturer/distributor, Hyundai Motor America ("HMA"), breached its contract with a franchised motor vehicle dealer, Action Nissan, Inc., d/b/a Universal Hyundai ("Universal"). Appellant HMA is the North American distributor for Hyundai vehicles. (Doc. 277 at 14).[1] Hyundai Motor Corporation ("HMC") is the manufacturer of Hyundai and Genesis vehicles, and it is HMA's parent company. (Doc. 282 at 100). Appellee Universal is party to a franchise agreement with HMA and is a franchised Hyundai motor vehicle dealership. (Doc. 84-7 at 2). Appellee William Nero is the owner and dealer operator of Universal. (Doc. 277 at 56, 110-111). Herein, Universal and William Nero will be referred to collectively as "Nero".

In 2009, HMA and Nero entered into a settlement agreement to resolve then-pending litigation (the "2009 Agreement"). (Doc. 84-1 at 2).  The 2009 Agreement provided, *inter alia*, that Nero dismiss the then-existing lawsuit and release HMA of liability in exchange for payment and several other benefits. (*Id.* at 3-6). This appeal only concerns the rights and obligations noted in Section 10 of the 2009 Agreement. Section 10 of the 2009 Agreement granted Nero a right of first refusal to be

---

[1] Record page references refer to the page number as noted in the District Court CM/ECF header.

appointed as a dealer for two open points for a "new luxury motor vehicle line-make", if any was created by Hyundai Motor Corporation ("HMC") within ten years of the effective date of the 2009 Agreement, within eight specified Florida counties. (*Id.* at 5). Nero's rights of first refusal are triggered upon the satisfaction of three conditions: (1) HMC, or an entity controlled by HMC, established a "new luxury motor vehicle line-make;" (2) HMA, or a subsidiary or division of HMA, or an entity controlled by HMA, was "granted the rights of distribution in the United States" for that line-make; and (3) "open points" for the line-make were established within the specified Florida counties. *Id.*

The parties disagreed as to the meaning of the terms "line-make", "rights of distribution" and "open point", and jury instructions were provided on each parties' respective interpretation of these terms. (Doc. 303 at 11-12). Per these instructions, Nero had to prove that its "interpretation of the terms is correct" in order to prevail. *Id.*

## II.    Regulation Of Automobile Industry

Similar to other governmental agencies throughout the nation, the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") regulates the automobile industry, and franchise relationships in particular, in the State of Florida. Manufacturers and distributors must be licensed by the DHSMV, and are referred to

as "licensees". Fla. Stat. § 320.61. Franchised dealers must also be licensed by the DHSMV. Fla. Stat. § 320.27(2). Florida law provides that if franchised dealers are authorized to sell certain vehicles under a franchise agreement, they are legally entitled to continue selling *those same vehicles* even if said vehicles are rebranded or the plan of distribution for the vehicles changes. *See* Fla. Stat. § 320.6415. This law has been in effect since 1984, and as such existed prior to the drafting and execution of the 2009 Agreement.

The State of Florida does not determine line-makes; line-makes are designed and issued by the National Crime Information Center. (Doc. 292 at 11-12, 28). Open points, which are locations that manufacturers wish to establish dealerships, are also something that manufacturers and dealers establish separate from any state regulatory process. (Doc. 277 at 58, 81, 136; Doc. 292 at 33).

## III.    Genesis Spin-Off and Breach of the 2009 Agreement

In 2008, HMA introduced the Hyundai Genesis model, which was a Hyundai line-make vehicle distributed by HMA and called the "Genesis". (Doc. 282 at 116-117). The Hyundai Genesis was a luxury vehicle. *Id.* In 2016, HMA decided to create Genesis Motor of America ("GMA") as a separate entity to oversee the Genesis brand.  (*Id.* at 18). In 2016, two new vehicles were introduced, the Genesis G80 and G90. (*Id.* at 118-119). This was HMA's "first effort to establish [Genesis] as a

3

separate brand, which [it] did." (*Id.* at 119). When introduced, instead of using a separate dealer network or even using separate franchise agreements, these Genesis vehicles were simply distributed by HMA and sold by Hyundai dealers pursuant to the Hyundai franchise. *Id.*

HMA then planned to split the Genesis brand off into a smaller dealer network with separate Genesis franchise agreements. The initial plan for Genesis was to have around 100 stand-alone Genesis dealers across the country. (Doc. 280 at 78; Doc. 285 at 8). GMA was established in 2016, with HMA as the sole and managing member. (Doc. 205-12 at 1-4). In January of 2018, GMA issued a press release representing that it "distributes, markets, and services Genesis Vehicles in the United States." (Doc. 305-2 at 2). On March 2, 2018, GMA sent a letter to Hyundai dealers disclosing a list of "initial markets" for the Genesis brand, asking if dealers were "interested in applying to become a GMA Genesis dealer", and directing them to apply "in any market" identified on GMA's initial markets list. (Doc. 305-7 at 1, 14). These "initial markets" were open points established by HMA and/or GMA. (Doc. 277 at 98). Twelve of these initial markets were in Florida, and eight of those were in the eight counties covered by the 2009 agreement.[2] However, HMA never

---

[2] The eight counties covered by Section 10 are Broward, Palm beach, Orange, Osceola, Seminole, Hillsborough, Pasco, and Pinellas. (Doc. 84-1 at 5). The initial markets for Florida covered twelve specific markets. (*See* Doc. 305-7 at 14). The

communicated with Nero, never offered him his rights to select the first two Genesis dealerships in any of the markets, or evinced any intent to honor the 2009 agreement. Instead, HMA and GMA moved forward to establish the Genesis line-make and Genesis dealerships within Nero's contractual eight-county area during the ten-year ROFR period without allowing Nero to first select the two Genesis dealerships he was entitled to under the 2009 Agreement.

## IV.    Nero Attempts to Exercise Rights

Nero sent three separate letters to HMA dated January 29, 2018, February 14, 2018, and February 28, 2018. (Doc. 305-3; Doc. 305-5; 305-6). These letters expressed Nero's desire to exercise Nero's rights of first refusal under the 2009 Agreement and establish new Genesis dealerships. *Id.* HMA failed to respond to any of these communications, ignoring Nero's requests.

On March 12, 2018, days after GMA sent out its March 2nd letter soliciting dealers to apply to be selected for the open points listed as initial markets, and about two weeks after Nero's final request that his rights be honored, Nero filed this lawsuit. (Doc. 1). Nero brought claims against HMA for breach of contract, breach

---

only markets not in the eight identified counties are the Aventura Area, South Miami, South Jacksonville, and Central Naples. (*See also* Doc. 277 at 98-99).

of the implied covenant of good faith and fair dealing, and anticipatory breach, all based upon the 2009 Agreement. (Doc. 84 at 15-20).

## V.    DHSMV Ruling

On July 31, 2018 (four months after Nero filed suit), the DHSMV ruled there was already "a system of distribution in place for motor vehicles sold in the Genesis Line", noting Genesis vehicles were being sold by Hyundai dealers, and depriving those Hyundai dealers of the Genesis line would be a violation of Fla. Stat. § 320.6415. (Doc 305-14 at 1-2). Therefore, GMA offered to provide Genesis franchise agreements to all incumbent Hyundai dealers. (Doc. 305-15 at 1-2).

## VI.    Summary Judgment

The parties filed cross motions for summary judgment. (Doc. 176; Doc. 177). The District Court determined that a latent ambiguity existed as to several terms in Section 10 of the 2009 Agreement, but denied summary judgment on the breach claims. (Doc. 197 at 5-11). The District Court did, however, grant summary judgment to Nero as to all of HMA's affirmative defenses, including legal impossibility, ruling "the defense of impossibility is not available on the undisputed facts of this case." (*Id.* at 16-19).

6

## VII.  Trial and Post-Trial Motions

The case was tried to a jury, and Nero prevailed on the breach of contract and breach of good faith and fair dealing claims. (Doc. 304 at 1-4). The jury did not decide the anticipatory breach claim because it found in favor of Nero on the other claims. *Id.* Judgment was entered in favor of Nero, in the amount of $16,000,000. (Doc. 314).

HMA filed a post-trial motion seeking judgment as a matter of law and/or a new trial on various grounds. (*See* Doc. 318). The District Court denied all relief sought by HMA. (Doc. 338 at 21).

## STANDARD OF REVIEW

This Court reviews a "district court's ruling on a motion for judgment as a matter of law *de novo*, applying the same standard that the district court applied." *Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1230 (11th Cir. 2020). "In considering the sufficiency of the evidence that supports the jury's verdict," this Court reviews "the evidence in the light most favorable to, and with all reasonable inferences drawn in favor of, the nonmoving party." *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1214 (11th Cir. 2021) (internal quotation marks omitted). As the nonmovant, Nero need only "put forth more than a mere scintilla of evidence

7

suggesting that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Id.*

Further, this Court will review any questions of law *de novo*. *Id.* at 1215. "The interpretation of a contract is a question of law" and is reviewed *de novo*. *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293 (11th Cir. 2019).

Denial of a motion for new trial is reviewed for abuse of discretion. *Torres v. First Transit, Inc.*, 979 F.3d 876, 881 (11th Cir. 2020). The Court reviews "the legal correctness of a jury instruction *de novo* but will defer on questions of phrasing absent an abuse of discretion." *Cogar v. Citrus Cnty. Sheriff's Off.*, 847 F. App'x 549, 555 (11th Cir. 2021). "Furthermore, [j]ury instructions are subject to harmless error review." *Id.* (internal quotation marks omitted).

The Court reverses "only when a court's jury instructions leave us with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 922 (11th Cir. 2022) (internal quotation marks omitted).

## SUMMARY OF THE ARGUMENT

### I.    HMA SEEKS TO IMPROPERLY RELITIGATE THE SUMMARY JUDGMENT RULING ON IMPOSSIBILITY.

This appeal is HMA's attempt to relitigate an issue it lost at summary judgment and failed to preserve for appeal—the availability of its defense of legal

8

impossibility. In short, HMA's mantra was that the DHSMV prevented it from complying with obligations in the 2009 Agreement.  The District Court squarely, and correctly, rejected this defense.  Despite the summary judgment ruling, HMA continuously advanced legal impossibility as a defense at each stage of the trial. Since the trial, HMA's reliance on this inapplicable doctrine is unwavering.  HMA now seeks to relitigate the issue of impossibility through other perceived issues.

## II.    THE DISTRICT COURT PROPERLY DENIED JUDGMENT AS A MATTER OF LAW ON THE CONTRACT CLAIMS.

The District Court denied HMA's renewed motion for judgment as a matter of law because HMA failed to properly preserve the issues raised, and because the arguments failed on their merits. Contrary to HMA's contention, the 2009 Agreement does not unambiguously require that the conditions precedent exist simultaneously. However, even if HMA's interpretation was correct, its claim of error still fails because the record contains myriad facts which support the verdict even under its theory of simultaneous conditions precedent.

## III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO INSTRUCT THE JURY ON SIMULTANEOUS CONDITIONS PRECEDENT.

HMA attempts to demonstrate prejudicial harm based on Nero's closing arguments, yet failed to preserve the issue because it did not object to the closing arguments made at trial. HMA's interpretation of Section 10 is also incorrect, or at

9

the very least, Section 10 is ambiguous. As such, the District Court was not required to provide HMA's 11th hour proposed instruction. HMA has otherwise failed to show prejudicial harm resulting from the failure to give its requested instruction.

Furthermore, the District Court correctly determined that the great weight of the evidence supports a finding that all three conditions precedent coexisted, meaning that HMA could not be prejudiced by a failure to provide the instruction.

## IV.    THE DISTRICT COURT'S CURATIVE INSTRUCTION ON IMPOSSIBILITY WAS PROPER.

HMA argued that the District Court's curative instruction on HMA's defunct legal impossibility defense misled the jury. This is incorrect. The instruction properly stated the law, was given as a result of HMA's own questions (and defiance of the Court's pre-trial Orders, explicit instructions, and caution to HMA counsel during trial), and was the lesser alternative to a mistrial. Further, HMA has failed to demonstrate how the instruction was erroneous, or how HMA was prejudiced by a curative instruction, which was only necessary due to HMA's violation of the District Court's pre-trial rulings.

HMA also argues that the District Court ignored its argument, and that it was improper to enforce forfeiture of the issue *sua sponte*. These arguments fail, because HMA failed to provide proper supporting authority for its argument, and forfeiture occurs automatically.

## V.    THE DISTRICT COURT PROPERLY DENIED JUDGMENT AS A MATTER OF LAW ON ANTICIPATORY BREACH.

The final issue raised by HMA is that the District Court erred in denying judgment as a matter of law on the anticipatory breach claim. The Court need only reach this issue if it finds that the issue was timely raised, and if it also finds in favor of HMA on the other issues raised in this appeal. However, judgment as a matter of law is not warranted here, either. The anticipatory breach claim is valid because the 2009 Agreement is not, and never was, a unilateral contract. If HMA is correct, and the 2009 Agreement converted to a unilateral contract, then the 2009 Agreement would have converted back to a bilateral contract when Nero exercised his rights of first refusal. In any event, the facts and circumstances place the 2009 Agreement squarely within an exception to the general rule that anticipatory breach cannot apply to unilateral contracts.

## ARGUMENT

## I.    HMA SEEKS TO IMPROPERLY REARGUE THE ISSUE OF IMPOSSIBILITY, WHICH WAS DECIDED AT SUMMARY JUDGMENT.

The goal of HMA's appeal is to circumvent the District Court's summary judgment ruling on the defense of legal impossibility, which HMA failed to preserve (and does not dispute that it failed to preserve) for appeal. HMA's primary defense to this lawsuit was that performance of the 2009 Agreement was legally impossible

11

as a result of DHSMV rulings which thwarted its "original plan for Genesis."[3] (Doc. 177 at 23-24). HMA argued that the DHSMV required all Hyundai dealers be offered Genesis franchises, which made it impossible to perform under the 2009 Agreement. (Doc. 197 at 16). Nero argued that the DHSMV's decision was foreseeable, was based on the governing statute (s. 320.6415) which existed when the 2009 Agreement was executed, and was a result of HMA's own business decisions. (Doc. 176 at 21-23).

The District Court agreed with Nero, granting Nero summary judgment as to impossibility and ruled that "the defense of impossibility is not available on the undisputed facts of this case." (Doc. 197 at 16-19).  Testimony at trial further reinforced the District Court's ruling.  HMA's witness, Wilfredo Hernandez (HMA's director of franchise relations and dealer law) admitted that HMA was aware that states had franchise laws (such as the Florida Dealer Act), as part of the well-developed regulation of the automotive industry. (Doc. 294 at 37-38).

---

[3] HMA's legal defense was stricken, but HMA's argument here is also plainly factually wrong when facts are considered.  The DHSMV decision on Genesis licensure was not issued until July, 2018.  Nero filed its lawsuit in March, 2018 after HMA refused to acknowledge Nero's three letters from early 2018 that sought to exercise its rights of first refusal.  Thus, HMA had breached the 2009 Agreement for almost seven months before the DHSMV issued its decision.

Nero filed a motion *in limine* seeking to exclude evidence and testimony relating to impossibility of performance. (Doc. 217 at 3-8). The District Court denied Nero's motion *in limine*: "the Court cannot say that the disputed evidence may not be relevant to issues that remain to be resolved in this case", but also warned HMA "that they will not be permitted to attempt to relitigate the issue of impossibility at trial or to use the evidence to imply such a defense to the jury in contravention of this Court's Order." (Doc. 237 at 7-8). In response to the order, and in light of pre-trial filings that revealed HMA intended to proceed with its impossibility defense, Nero moved for a jury instruction as to the unavailability of impossibility of performance as a defense. (Doc. 272 at 1-5). This motion was discussed on the first day of trial, after jury selection, with the District Court stating, "I'm not inclined to grant the giving of that instruction unless my ruling is not abided by." (Doc. 274 at 92).  HMA did not abide by the District Court's rulings.

Despite the summary judgment ruling, and the District Court's admonitions that HMA will not be permitted to attempt to relitigate the issue or even imply it, HMA repeatedly attempted to prove that performance under the 2009 Agreement was impossible due to the DHSMV's actions.  HMA asked multiple witnesses about GMA's failed plan and the DHSMV rulings.  For example:

13

- "are you aware that the [DHSMV] determined that every Hyundai dealer had to be offered a Genesis Franchise";

- "[w]hy did Genesis not go forward with [the original plan]"; and

- "what motivated that change in plan"—

(Doc. 277 at 150; Doc. 282 at 106; Doc. 285 at 33). Nero objected to each of these questions. Nero's objections to the first two questions were sustained, and the Court permitted the third question with the caveat that HMA "better know what this guy is going to say", because the District Court suspected the witness was going to "start blurting out something about the impossibility defense." (Doc. 277 at 150-152; Doc. 282 at 106; Doc. 285 at 33-35). Sure enough, immediately after the District Court cautioned HMA during sidebar that impossibility cannot be part of the testimony, HMA reposed the question ("what motivated that change in plan"), and HMA's star witness (Mr. Raphael) blurted out "it made it almost impossible." (Doc. 285 at 36). As a result, the District Court struck the testimony and granted Nero's request to instruct the jury on impossibility. (*Id.* at 36-37).[4]

---

[4] During the charge conference, HMA contested the jury instruction on impossibility, and the District Court stated that she had "warned counsel" about the instruction, and noted that the witness blurting out "impossibility" was "egregious" and grounds for a mistrial. (Doc. 297 at 99).

This curative instruction, provided in lieu of a mistrial, is raised as issue three in HMA's brief and addressed in more detail herein. (Appellant Br. at 20).

HMA attempted to challenge the summary judgment ruling as error in its post-trial motion, but the District Court correctly noted that such a challenge was improper under Federal Rule of Civil Procedure 59(a) or (e) and denied HMA's requested relief. (Doc. 318 at 17-19; Doc. 338 at 13-14). HMA did not challenge that directly on appeal, but instead seeks to circumvent the ruling on impossibility by arguing that (1) its purported abandonment of its initial markets plan (open points) due to the DHSMV decision prevented the three conditions from coexisting; (2) the failure to provide HMA's proposed jury instruction on the simultaneous conditions precedent, that in HMA's view can only occur after DHSMV licensure, is error; (3) the District Court's curative instruction on impossibility was error; and (4) that the anticipatory breach claim is not valid because the subject conditions precedent never arose, once again due to the timing of DHSMV licensure. All of those arguments are premised on the DHSMV's conditions of licensure, which is HMA's impossibility defense.

HMA should not be permitted to re-litigate the impossibility issue that it lost at Summary Judgment and failed to preserve for appeal.

## II.    THE DISTRICT COURT PROPERLY DENIED JUDGMENT AS A MATTER OF LAW ON THE CONTRACT CLAIMS.

The District Court properly denied HMA's renewed motion for judgment as a matter of law regarding its simultaneous conditions precedent argument, because HMA failed to raise it (or a substantially similar argument) in its Rule 50(a) motion. HMA's arguments during the charge conference also failed to preserve the issue, because HMA merely argued that the issue should be presented to the jury with a revised instruction, and did not argue that there was an evidentiary deficiency that would prevent sending the question to the jury.

Arguing that the jury should receive an instruction on the evidentiary issue is antithetical to an argument that the claim is not supported by any evidence and cannot go to the jury.  In any event, the District Court also determined that the argument failed on the merits, as there is sufficient record evidence for a jury to have found that the conditions precedent coexisted on or near March 2018.

### A. HMA Waived Claims Not Raised in its Rule 50(a) Motion, and The District Court Also Properly Denied the Motion on the Merits.

The District Court correctly ruled that HMA never filed a Rule 50(a) motion on the issue of simultaneous conditions precedent under the 2009 Agreement. (Doc. 338 at 5-6). The only issue raised in HMA's Rule 50(a) motion on the breach claims was that there is "no[] evidence in the record…that there were open points created by Hyundai" and that "therefore, the [breach claims] should be dismissed…" (Doc.

16

290 at 84-85). HMA's position was only that "all the conditions required for Hyundai's performance must have occurred." (*Id.* at 84). Stated another way, HMA's case presentation (all the way from pre-trial conference to witness questioning) was that one of the three conditions did not occur (there were no open points)[5], and as such, the 2009 Agreement obligations were not triggered.

It was not until after the close of evidence that HMA brought up the issue of coexisting preconditions, or contractual interpretation. (*See* Doc. 297 at 84-89). HMA pivoted from its position that open points did not occur to the position that even if all three conditions occurred, the conditions had to have occurred simultaneously (i.e., at the point of DHSMV licensure). HMA contends that it preserved the issue by raising it for the first time at the charge conference. (Appellant Br. at 52). This is incorrect.

First, HMA failed to preserve this issue because it was not raised in its Rule 50(a) motion. HMA's argument that the issue of simultaneous conditions precedent did not "vary greatly" from its prior motion is patently false. While the Court may not consider grounds first raised in a Rule 50(b) motion, "[s]trict identity of issues .

---

[5] Impossibility is at the root of this as well. HMA's position is that it could not create "open points", because the DHSMV made it impossible, which as the Court noted on Summary Judgment and in its curative instruction, is not a defense that is available.

. . is not required." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1243 (11th Cir. 2010). However, the issue(s) raised must be "closely related, such that opposing counsel and the trial court may be deemed to have notice of the deficiencies asserted by the moving party." *Id.* (internal quotations omitted). HMA's Rule 50(a) motion argued that there was insufficient evidence to prove one of the contract conditions (i.e., open points) existed. HMA's new argument, that the conditions must exist simultaneously, is a contractual interpretation argument, which is not closely related. These are entirely unrelated theories, and thus HMA's argument here must be rejected. There is no way that Nero's counsel or the District Court would have had notice of HMA's newly concocted position based on its Rule 50(a) motion. The District Court addressed this deficiency, stating:

> Here, although both arguments advanced by HMA touch on issues regarding the conditions precedent to performance, the Court is not satisfied that the grounds asserted in HMA's Motion are suitably related to the argument advanced in its Rule 50(a) motion at trial. To be clear, **at trial HMA only argued that Plaintiffs had failed to present sufficient evidence that one of the conditions had been met**. **It did not argue, however, that it had not been met when the other conditions had been met and did not, in fact, make any mention of the other conditions or any arguments regarding interpretation of the contract**. Arguments regarding the sufficiency of the evidence as to one element of the contract are simply too far removed from arguments regarding the proper interpretation of the contract generally to have placed either Plaintiffs or the Court on notice of the newly raised argument.

(Doc. 338 at 7) (emphasis added). In summary, while both arguments touched on conditions precedent, HMA's new argument is not "closely related", because it 1)

concedes all conditions may have existed; and 2) asks for a rewrite of the contract and/or argues for a particular contractual interpretation that had not been uttered up to that point. Moreover, HMA only makes a conclusory allegation that the motion did not "vary greatly", and does not attempt to explain how the issues are sufficiently "closely related." (Appellant Br. at 53; Doc. 329 at 4). In reality, the entire trial related to conditions precedent—that alone does not preserve each and every issue that HMA could conceive on appeal.

Second, to the extent HMA raised this issue at the charging conference and after its Rule 50(a) motion, it still failed to preserve the issue. This Court has stated that "a Rule 50(b) argument may, in some cases, be properly preserved by an argument clearly and unambiguously raised during a charge conference." *McGinnis v. Am. Home Mortg. Servicing*, Inc., 817 F.3d 1241, 1263 (11th Cir. 2016). To preserve such an argument, however, "a party must 'clearly point[ ] out a claimed evidentiary deficiency to court and counsel.'" *Id.* at 1262 (quoting *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979)). The District Court noted, however, that "HMA argued that language needed to **be added to the instruction** to guide the jury, but **HMA never argued that the issue should not be submitted to the jury** or that there was insufficient evidence to send the question to the jury." (Doc. 338 at 9). HMA tacitly concedes this point by its failure to cite to any such

19

claim of evidentiary deficiency in the trial record.[6] (*See* Doc. 297 at 84-89). Further, while HMA objected to its last-minute proposed instruction not being given, HMA **unequivocally did not "object to the content of" the instruction** provided by the District Court pertaining to the occurrence of the conditions precedent. (*Id.* at 89). In a similar circumstance, this Court held that a contract interpretation issue is "forfeited" where the party is inconsistent as to whether an issue should be decided by the judge or jury. *Dear*, 933 F.3d at 1299. That is exactly what occurred here, and thus HMA has forfeited this issue.

> **B.    The 2009 Agreement does not Unambiguously Require the Three Conditions Precedent to Exist Simultaneously.**

Even if the issue had been preserved, the 2009 Agreement does not require simultaneous preconditions. The plain language of the contract does not create such a requirement. At best for HMA, the 2009 Agreement is ambiguous—but even then HMA's appeal still fails.

The Court shall interpret the 2009 Agreement "in accordance with its plain meaning, and, unless an ambiguity exists, [will] not resort to outside evidence or the

---

[6] At best, HMA argued that there was not sufficient evidence for a single element of *anticipatory breach* by claiming "we don't believe there's sufficient evidence in the record that a distinct unequivocal and absolute refusal to uphold contract"—but that argument only pertains to a single legal element of anticipatory breach that does not overlap with the elements of actual breach, and is wholly unrelated to the coexistence of preconditions HMA claims is required for a breach.

20

complex rules of construction to construe the contract." *Dear,* 933 F.3d at 1293 (internal quotation marks omitted).[7] In doing so, the Court must "take care not to create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions." *Id.* (internal quotation marks omitted). "If, however, the contract is reasonably susceptible to more than one interpretation, it is ambiguous and its meaning is a question for the jury." *Id.* at 1298 (internal quotation marks omitted).

### i. The Plain Language does not require Simultaneous Conditions Precedent.

The plain language of the 2009 Agreement does not require conditions to come into existence simultaneously. This is another attempt by HMA to reinject impossibility into this matter. HMA's "simultaneous conditions precedent" argument is based entirely on state licensure (to which the 2009 Agreement is silent). Specifically, HMA has attempted to link open points to its own narrow definitions of "line-make" and "rights of distribution" by now claiming that the conditions all had to exist simultaneously. In HMA's world, simultaneous really means that the conditions all had to occur after licensure by the State of Florida—which could not have happened due to the DHSMV's ruling.

---

[7] "[W]here the language of an agreement is unambiguous, the legal effect of that language is a question of law and, as such, may be declared by the court." *Dear*, 933 F.3d at 1298 (quoting *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1439 (11th Cir. 1996)).

There is a ten-year period during which the conditions may occur. (Doc. 84-1 at 5). Section 10 of the 2009 Agreement grants Nero the rights of first refusal if the three conditions come into existence within the ten-year period. Notably, nothing in Section 10 provides that the conditions must occur simultaneously, or that Nero's rights are triggered only upon such an occurrence, much less state licensure. The plain language simply does not support such a reading, as the District Court correctly noted when HMA asked for the instruction: "but that's not what the contract said." (Doc. 297 at 85).

HMA's trial presentation also refutes its argument. The jointly proposed jury instructions do not mention, much less require, simultaneously conditions precedent. (Doc. 228-5 at 27-30). Likewise, HMA's opening statement and trial presentation focused on the alleged lack of open points and not the purported necessary simultaneous nature of the conditions. (*See, e.g.,* Doc. 277 at 35 ("open points that plaintiff said Mr. Nero was entitled to never existed."); Doc. 277 at 43 ("there never were any open points for Genesis"); Doc. 277 at 51 ("[Genesis] does not have any open points."); Doc. 280 at 77 ("then there wouldn't have been any open points, right.")) HMA's Proposed Verdict Form also did not require that the preconditions exist simultaneously. (Doc. 228-7 at 1). HMA waited until after the close of evidence

to propose its novel and incorrect interpretation of the 2009 Agreement, and requested new jury instructions at the same time. (Doc. 297 at 84).

Further, in reaching its desired interpretation, HMA exhausts pages of its brief applying rules of construction to the contractual language. (Appellant Br. at 43-46). This belies any legitimate argument that the plain language of the 2009 Agreement requires coexisting conditions precedent because "[t]he canons of construction cannot be used when the contract is unambiguous as there is no need for judicial construction." *Gold Crown Resort Mktg. Inc. v. Phillpotts*, 272 So. 3d 789, 792 (Fla. 5th DCA 2019), *see also Dear*, 933 F.3d at 1293 ("unless an ambiguity exists, [the Court] not resort to outside evidence or the complex rules of construction to construe the contract.")

Evidence presented at trial also showed that in practice, manufacturers or distributors (such as HMA) routinely award open points before obtaining state licenses. This directly undercuts HMA's argument that the three conditions precedent must exist simultaneously by explaining that open points can be created and awarded prior to the completion of licensing efforts.[8] (Doc. 280 at 11; Doc. 282

---

[8] Under HMA's interpretation, open points could be created and offered to dealers without breaching its obligation to provide Nero with rights of first refusal on those very open points. Trial evidence and testimony demonstrated that open points are created without DHSMV involvement, and can be created without or prior to licensure. Accordingly, HMA's theory allows it to avoid its contractual obligations

at 60; Doc. 285 at 64-65). Mr. Raphael testified that open points can be promised to dealers prior to licensure when a manufacturer "want[s] to appoint a particular dealer at a particular open point **but the appointment isn't done because of whatever licensing reasons or whatnot.**"    (Doc. 285 at 64-65) (emphasis added). The DHSMV representative also testified that open points are "something a manufacturer and dealer would work out **before** they would submit any application to [DHSMV]." (Doc 292 at 33) (emphasis added).

HMA's interpretation misses the forest for the trees. HMA's ultimate obligation is to provide Nero with rights of first refusal on open points, and because HMA's interpretation thwarts that obligation it must be rejected.

### ii.  The 2009 Agreement is Ambiguous

Additionally, in its Summary Judgment Order, the District Court declared the 2009 Agreement's language on the conditions precedent ambiguous. (Doc. 197 at 6).  The parties proceeded to try the case by eliciting testimony about the meaning of Section 10's terms (specifically, "line-make," "distribution rights" and "open point").  HMA did not object to the use of extrinsic evidence to explain the meaning of the terms, and indeed, was heavily involved in trying to elicit much of the testimony.  (*See, e.g.,* Doc. 290 at 100, 105, 107-108, Doc. 297 at 12). Both parties

---

purely because the open points were created and closed prior to the other two preconditions being completed. *This* is an absurd result.

called upon the attorneys involved in drafting the 2009 Agreement, including Mr. Quinton and Mr. Bertron, to elucidate the terms of the agreement. (*See, e.g.,* Doc. 285 at 84, 88; Doc. 290 at 99-100). Indeed, even in its post-trial motions, HMA argued that it should have been permitted to present *even more* extrinsic evidence about the meaning of Section 10 of the 2009 Agreement. (Doc. 318 at 17). Extrinsic evidence is not needed to explain an unambiguous contract. Yet, HMA now argues that Section 10 is straightforward and unambiguous. This must be rejected.

HMA, in its brief, tries to cover up that this theory was novel by incorrectly alleging that "Nero shifted his theory of breach" and that HMA's shift was only in response to Nero's. (Appellant Br. at 48, 49, 51, 66). However, the record flatly refutes this contorted view. The alleged "shift in theory" that HMA refers to is a single conversation about anticipatory breach during the charge conference. (Doc. 297 at 62). The record reflects that Nero's theory did not shift in front of the jury, or at the charge conference. For example, the first mention of HMA's requested instruction is later on in the same charge conference when the Judge is discussing breach. (Doc. 297 at p. 84:24-97:10). Nowhere in that colloquy is there any discussion of a supposed shift in theory; nor is there any discussion of the January date. Instead, HMA counsel argues: "The reason for that, Your Honor, is I think there's been a lot of argument about the open points having existed back in March

25

of 2018." (*Id.* at 85). HMA was clearly aware that its case theory (the open point condition never occurred) was debunked. HMA then attempted to pivot by devising a theory that would inoculate itself from a finding of breach. So, HMA concocted a new contractual argument that all conditions must occur simultaneously to once again try to loop in its DHSMV impossibility theory, and argue that the conditions were not simultaneous since DHSMV licensure could not occur until October, 2018.

The record shows that Nero consistently argued its theory of the case. In Nero's closing, counsel argued the breach occurred before the lawsuit was filed in March 2018 and certainly before DHSMV made their decision in July 2018. (Doc 307 at 12). HMA's reliance on one statement during the charge conference (when the jury was not present) is misplaced, and asks this Court to ignore what was actually presented to the jury.

> ### C.    The Record Contains Facts Which Support a Conclusion that the Conditions Precedent Coexisted.

Even if HMA's interpretation of the 2009 Agreement is correct, HMA still cannot prevail, because the record contains facts which support the jury verdict even if the conditions precedent were required to exist simultaneously. This fact was noted by District Court, explaining there is ample evidence that supports the conditions coexisting in March, 2018:

[U]nder the interpretations of those terms offered by Plaintiffs, as set forth in the Court's instructions to the jury, a reasonable jury could have found: (1) that a line-make existed at any time after Hyundai Motor Company made the decision to sell Genesis vehicles as its own brand of vehicles, independent of the Hyundai name, and (2) that a subsidiary of HMA had distribution rights in the United States once they were granted by its parent corporation, regardless of the existence of the right to distribute vehicles in Florida. (Doc. 303 at 11). First, there is evidence from multiple witnesses that a distinct Genesis brand existed prior to March 2018. For example, there was testimony by multiple witnesses and evidence introduced at trial that a luxury brand was being created as early as 2007, that the Genesis brand existed prior to 2014 and was announced as a separate brand in 2015, that HMA hired someone to "launch and lead the Genesis brand in the United States" in 2016 or early 2017, that the GMA entity was created in November 2016, that GMA viewed Genesis as a brand separate from Hyundai no later than 2018, and in January 2018 HMA and GMA issued a national press release identifying Genesis as "a global luxury automotive brand." (Doc. 280 at 42:10–12, 46:23–47:6, 48:4–17, 49:23–50:5, 86:18–21, 107:12–18; Doc. 282 at 16:13–24, 18:8–11, 26:1–10, 43:9–15; Doc. 305-2 at 2; Doc. 305-12 at 1, 4).

As to the latter, there was testimony that Hyundai Motor Company authorized GMA to distribute Genesis vehicles in the United States in 2018, and roughly nineteen states did not require a distributor's license to be issued by the state. (Doc. 285 at 50:9–17; Doc. 297 at 21:3–14). Additionally, in January 2018, HMA and GMA issued a press release stating that GMA "distributes, markets and services Genesis vehicles in the United States[,]" (Doc. 305-2 at 2), and in March 2018, offered existing Hyundai dealers a Settlement and Release Agreement in which HMA and GMA were defined as the "Distributor Parties" for the Genesis line, (Doc. 305-7 at 4).

Finally, HMA concedes for purposes of its motion that there was sufficient evidence from which a reasonable jury could find that open points existed between March and May 2018. (Doc. 318 at 13 & n.4). **Accordingly, even if the 2009 Agreement required all three conditions precedent to exist simultaneously, there was sufficient evidence from which a reasonable jury could have found that those**

27

**conditions existed on or near March 2018**. Therefore, HMA's Motion is also denied on the merits.

(Doc. 338 at 11-12) (emphasis added). Even if HMA had not conceded that open points existed in March of 2018, there was testimony at trial that in 2018:

- HMA "or Genesis had published a list of points they were going to open in the State of Florida";

- that forms were sent for "dealers to apply for a Genesis open point" and that the form showed that open points "were established" in the "eight-county area";

- that when a fresh dealer network starts, "all of the markets" designated by a new distributor are open points; and

- that GMA itself sent out a form which identified "initial markets" and requested dealers to "apply for a Genesis Dealership." (*See*, *e.g.*, Doc. 277 at 84, 97, 98, 100, 10; Doc. 290 at 62; Doc. 305-7 at 1, 14).

In summary, Nero and HMA were both allowed to argue competing interpretations of the 2009 Agreement, rather than providing HMA's proposed instruction that the conditions must exist simultaneously. HMA concedes that it was permitted to argue its simultaneous conditions interpretation. (Doc. 318 at 24). HMA presented its theory to the jury, but even under its theory the evidence still supports a verdict for Nero. Accordingly, HMA's motion was properly denied because

28

judgment as a matter of law is only appropriate "where a court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on [an] issue." *Tracy v. Fla. Atl. Univ. Bd. of Trustees*, 980 F.3d 799, 811 (11th Cir. 2020) (internal quotation marks omitted). This Court "will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence." *Id.*

The parties, at HMA's insistence, also provided competing interpretations of the following ambiguous terms and phrases underlying the conditions precedent: "open point", "line-make" and "rights of distribution in the United States." (Doc. 297 at 79-83; Doc. 303 at 11-13; Doc. 307 at 85-88). The District Court instructed the jury that "[p]laintiffs must prove that their interpretation of the contract -- plaintiffs must prove that their interpretation of the terms is correct." (Doc. 307 at 87). In other words, the Court told the jury if they accept HMA's interpretation of the contract, then Nero should lose. Clearly, the jury chose Nero's interpretation of the contract's terms. The timing of the conditions precedent could shift greatly depending on whether Nero's or HMA's terms were accepted by the jury. HMA's terms peg the occurrence of the condition to DHSMV licensure, whereas Nero's do not. HMA's argument is disconnected from reality as it argues that the preconditions never coexisted using its interpretation of the terms, instead of Nero's. (*See* Doc.

29

318 at 12-14; Appellant Br. at 46-51). However, as the instruction makes clear, the Jury rejected HMA's interpretation of those terms.  And, most importantly for this appeal, HMA does not challenge whether the conditions occurred under Nero's interpretations, only whether they coexisted.

HMA's next contention, that the District Court was required to, but did not, undertake a plain error review of this issue, is baseless and a red herring. While the District Court disagreed that plain error review was required, and aptly pointed out the HMA's argument for plain error was conclusory and thus waived[9], it still considered the issue on the merits and rejected HMA's argument, citing record evidence which HMA falsely claimed did not exist. (*See* Doc. 338 at 10-12).

### III.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO INSTRUCT THE JURY ON SIMULTANEOUS CONDITIONS PRECEDENT.

HMA argues that the District Court abused its discretion in refusing to provide HMA's proposed jury instruction on contract interpretation. (Appellant Br. at 54-59). "[R]efusal to give a requested jury instruction amounts to an abuse of discretion when (1) the requested instruction correctly stated the law, (2) the instruction dealt

---

[9] The only argument for plain error made by HMA's post-trial briefing was that "no evidence showed that all three preconditions existed simultaneously" and that "[r]equiring HMA to pay millions for supposedly breaching Section 10 in the absence of such evidence would be plain error and a miscarriage of justice." (Doc. 329 at 5).

with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *Brink*, 38 F.4th at 923 (internal quotation marks omitted). HMA attempts to manufacture prejudicial harm where there is none by pointing to Nero's closing arguments—despite failing to object to the closing arguments during trial. HMA's failure to object undermines any claims of prejudicial harm. Further, while HMA's proposed instruction generally dealt with an issue before the jury, it did not correctly state the law, and even if it did, HMA suffered no prejudicial harm from failure to provide the instruction.

## A. HMA Failed to Object to Nero's Closing Arguments.

HMA's brief takes dead aim at Nero's closing arguments regarding the jury instructions and the alleged prejudice those arguments created. (*See* Appellant Br. at 54-57). Unfortunately for HMA, it failed to preserve those arguments during trial, much less with the sound and fury in HMA's appellate brief.  Consequently, HMA's appeal fails.

The thrust of HMA's argument is that Nero's closing arguments "confirms 'that the jury was improperly guided.'" (Appellant Br. at 56). HMA quotes from the following statements made by Nero's counsel during rebuttal:

> Well, he tried to tell you that in order for my plaintiffs' claims – in order for us to prove my clients' claims, that we would have to prove that all of them existed at the same time. Well, that's simply not true. It's not what the contract says. It's not what Judge Berger's going to tell you. It's not in the jury instructions. It's not on the verdict form. If that were

31

true, surely it would make its way into one of those documents, but it's not there. (Doc. 307 at 72).

…

That's not what the contract says. It's not what the jury instruction says. It's not what the verdict form says. And nothing Judge Berger is going to say contradicts that.

(*Id.* at 79).

HMA repeatedly quotes lines from these statements, overplaying their import on the trial. (Appellant Br. at 17, 34, 41, 56).

These statements directly rebutted HMA's argued interpretation, and do not (contrary to HMA's insistence) reinforce an improper instruction. HMA argues that Nero was allowed "to imply that the court endorsed Nero's erroneous interpretation." (*Id.* at 57). That is incorrect. The quote is from Nero's ***rebuttal*** argument, which "rebutted" HMA's closing argument that the 2009 Agreement conditions must occur simultaneously. That is entirely appropriate, and indeed, the point of rebuttal. In contrast to HMA's hyperbole, Nero did not argue that HMA asked for a different interpretation and the Judge refused, or that the Judge agreed with Nero. Nero rebutted HMA's closing argument and pointed out why HMA's argued interpretation was wrong. Specifically, "[i]t's not what the contract says."

Regardless, HMA never once objected to Nero's statements during closing arguments or at any point thereafter, notwithstanding the alleged paramount importance of this issue. (*See* Doc. 307 at 5-36, 72-79, 79-103). HMA's failure to

32

object is absolutely fatal to its appeal.  This Court has clearly stated that a party's "failure to object to the statements either during closing argument or right after argument ended undermines any claim that those statements were so prejudicial as to warrant a new trial." *Wallace v. Mangiaracina*, 745 F. App'x 356, 359 (11th Cir. 2018); *Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993) ("Our general rule is that a timely objection is necessary to bring to the district court's attention errors in counsel's arguments."); *Cephus v. CSX Transp., Inc.*, 771 F. App'x 883, 895 (11th Cir. 2019) (affirming denial of a new trial where the party failed to object to closing arguments). "Requiring timely objection prohibits counsel from 'sandbagging' the court by remaining silent and then, if the result is unsatisfactory, claiming error." *Oxford Furniture Companies,* 984 F.2d at 1128. However, "[w]hen no objections are raised, we review the arguments for plain error, but a finding of plain error is seldom justified in reviewing argument of counsel in a civil case." *Id.*

Nevertheless, the smoke and mirrors of HMA's argument is further brought to light by the fact that HMA was the party that asked the District Court if it could argue to the jury about the jury instructions.  Specifically, "[a]re we allowed to show the jury instructions once the Court has finalized them?"  (Doc. 297 at 107).  The District Court affirmed, but now HMA tries to whipsaw this Court by suggesting

33

that arguments about the instruction and/or contract interpretation were improper. Moreover, Judge Berger noted that such arguments would be good arguments to make to the jury, and HMA did not object to Judge Berger's comments or provide any indication that it believed such was impermissible. (Doc. 297 at 86-87). Indeed, much like the other "errors" raised, HMA just does not like the outcome. HMA's parlor tricks must be rejected.

### B. HMA's Proposed Jury Instruction Did Not Correctly State the Law.

HMA's proposed jury instruction also failed to correctly state the law. The contract did not require what HMA claims, and the District Court correctly observed "that's not what the contract says." (Doc. 84-1 at 5; Doc. 297 at 85). Additionally, the contractual terms were found to be ambiguous. Where a contract is ambiguous, "its meaning is a question for the jury", thus the Court was not required to provide HMA's proposed instruction[10]. *Dear*, 933 F.3d at 1298. The 2009 Agreement is ambiguous if "it is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 943 (11th Cir. 2020)(internal quotation marks omitted).[11]

---

[10] HMA argues that "the court instructs jurors on the law", but fails to provide any authority stating that a court must give jury instructions on a party's preferred interpretation of an ambiguous contract provisions. (Appellant Br. at 57).

[11] As noted above, the District Court determined there were latent ambiguities in the 2009 Agreement, and HMA itself attempted to introduce parol evidence to explain

Importantly, the jury was instructed on contract interpretation, it was just not HMA's desired interpretation that the jury found.  (Doc. 303 at 11-13).

As argued *supra*, HMA's interpretation is incorrect, or at best, Section 10 is ambiguous as to the coexisting of conditions precedent. (*See supra*, pp. 20-26). Under either scenario, HMA fails the first prong of the test.

### C. HMA Cannot Show That It Suffered Any Prejudicial Harm.

Moreover, even if HMA was correct as to the interpretation of Section 10, HMA has not established that it suffered any prejudicial harm from the District Court's decision not to instruct the jury on HMA's proposed interpretation. The District Court pointed to the lack of prejudicial harm it its Order:

> Rather, the instruction left room for the parties to argue their desired interpretation to the jury, which, as HMA concedes, both parties did. (Doc. 318 at 24; Doc. 329 at 5). Furthermore, as set forth above, even under HMA's interpretation of the 2009 Agreement, the great weight of the evidence supports a finding that all three conditions precedent did in fact exist simultaneously on or about March 2018.

(Doc. 338 at 18). The District Court's reasoning succinctly (and correctly) identified why HMA's claim of error fails even if its proposed instruction correctly stated the law. Most notably, HMA was not foreclosed from arguing to the jury for its proposed interpretation.  And, the great weight of evidence supports the jury verdict even

---

the terms of the contract. (Doc. 197 at 6-7; Doc. 290 at 100, 105, 107-108, Doc. 297 at 12).

under HMA's simultaneous condition precedent theory (*see supra*, pp. 26-30). Stated another way, even if HMA's instruction of coexisting conditions had been given, the great weight of the evidence supports that such conditions existed in March 2018. Consequently, HMA has not, and cannot articulate the prejudicial harm required for a new trial to be granted. *See Sabal Trial Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 824 F. App'x 621, 626 (11th Cir. 2020) (holding that the movant failed to show prejudice where there was no reason to believe that a different instruction "would have caused the jury to return a different verdict"); *ADT LLC v. Alarm Prot. Tech. Fla., LLC*, 646 F. App'x 781, 786 (11th Cir. 2016) (holding that the failure to give an instruction did not prejudice the requesting party because it did not bar the jury from considering the party's theory).

Nevertheless, HMA incorrectly argues that it suffered "significant prejudice" because "[w]hether the three preconditions had to, but did not, coexist 'was the heart of HMA's defense'". (Appellant Br. at 55). This is completely false and defies logic—this theory could not be the "heart" of HMA's defense, primarily because it was not raised until the charging conference and **after** the close of evidence. (*See* Doc. 297 at 84-85). That is also not the standard of review.

HMA's opening statements illuminates the illusion that it is attempting to present to this Court. There, HMA only argued that "[t]he open points that plaintiff

36

said Mr. Nero was entitled to for Genesis never existed."[12] (Doc. 277 at 35). It was not until closing arguments that HMA argued that "all three have to have existed at the same point in time." (Doc. 307 at 43). HMA's 11th hour contractual interpretation argument was clearly not the "heart" of its case, and even if it was, sufficient evidence exists to support the jury verdict even under HMA's simultaneous condition precedent theory, which negates any perceived harm to prejudice. (*See supra*, pp. 26-30).

HMA also tries to manufacture prejudice out of Nero's rebuttal closing argument by claiming that Nero "'stressed' his incorrect interpretation of Section 10." (Appellant Br. at 56-57). This perceived prejudice fails for the same reason, but is also addressed in subsection A above.

HMA further contends that the District Court incorrectly concluded that the great weight of the evidence supported a finding that all three conditions precedent coexisted, and also failed to independently analyze the facts to determine "the great weight of the evidence." (Appellant Br. at 57-58). "A district court should grant a motion for new trial only when the verdict is against the great, and not merely the greater, weight of the evidence." *Quevedo v. Iberia Lineas Aereas de Espana*

---

[12] HMA also put on extensive witness testimony during trial in an effort to show that open points never existed. (*See, e.g.,* Doc. 285 at 7, 20, 61, 79, 80).

*Sociedad Anonima Operadora Co.*, 811 F. App'x 559, 562 (11th Cir. 2020) (internal quotation marks omitted). Under this standard, the Eleventh Circuit will ordinarily only "reverse a decision denying a motion for new trial only where there is an absolute absence of evidence to support the verdict." *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F.4th 1267, 1273 (11th Cir. 2021). Here, there is ample evidence to support the verdict, and HMA does not even attempt to argue that there is an "absolute absence" of evidence supporting the verdict.

Instead, HMA argues that there is a "mountain of evidence" confirming its contrary position, that the conditions did not coexist, but this is not the applicable standard[13]. (Appellant Br. at 57).

Finally, HMA's claim that the District Court "never explained how the great weight of the evidence supposedly supported Nero's definition" is also meritless. (*Id.* at 58). The District Court spent two pages of its Order citing record evidence which, even if HMA's simultaneous conditions interpretation was correct, still supported the jury's verdict. (Doc. 338 at 11-12; Doc. 338 at 18). In doing so, the

---

[13] To work in HMA's favor, this argument also requires the Court to agree with HMA's proposed contract terms in addition to its simultaneous condition theory. However, the jury rejected HMA's interpretation of those terms, and HMA has not contested that on appeal. Under the pertinent jury instructions, Nero could only win if its "interpretation of the terms is correct." (Doc. 303 at 12). Thus, HMA is stuck with Nero's interpretation of the terms, and using those interpretations here, there is undoubtedly sufficient evidence to deny HMA's appeal.

District Court demonstrated that the verdict was supported by the evidence under either interpretation.

A new trial should not be granted for any issues which rely upon perceived prejudice caused by Nero's closing arguments because HMA failed to object to Nero's closing arguments. However, even if the issue were preserved, HMA cannot show that its proposed instruction was legally correct, and HMA has not shown that failure to give the instruction resulted in any prejudice.

## IV.    THE DISTRICT COURT'S CURATIVE INSTRUCTION ON IMPOSSIBILITY WAS PROPER.

HMA also requests a new trial based on the District Court's curative jury instruction on HMA's defense of legal impossibility, which was disposed of at summary judgment. (Doc. 197 at 16-19; Doc. 285 at 34-37). As discussed *supra*, this curative instruction was given only after HMA's witness blurted out that HMA's plans were "impossible", despite being warned not to do that by the District Court mere moments before. (Doc. 285 at 35-36). The District Court stated that the incident was "egregious", and noted that if a mistrial had been requested "I probably would have granted a mistrial." (Doc. 297 at 99).

HMA argues that the curative instruction misled the jury to ignore HMA's entire defense by claiming that the evidence was independently relevant for matters other than impossibility. This is patently incorrect for several reasons. First, the

curative instruction accurately stated the law, so one wonders how an accurate statement would be misleading. And, HMA has not pointed to anything incorrect in the curative instruction either in this appeal or in its post-trial briefing.  Second, HMA was permitted to introduce substantial evidence about everything other than impossibility, to include the DHSMV licensure process. Third, and perhaps most importantly, HMA forfeited this defense by completely failing to provide any authority showing the instruction in question was an incorrect statement of the law. HMA also argues that the District Court improperly enforced forfeiture of this argument *sua sponte*. HMA fails to cite appropriate authority for this claim as well, is entirely incorrect, and its claim of error must be rejected.

### A. The District Court's Jury Instruction on Impossibility Was Proper.

This Court reviews "jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party, but the district court is given wide discretion as to the style and wording employed in the instructions." *Sabal Trail Transmission, LLC*, 824 F. App'x at 625 (internal quotation marks omitted). Further, when considering challenges to jury instructions, the Court will "reverse the verdict of the jury only where the appellant shows both error and prejudice." *Id.* at 626. (internal quotation marks omitted). HMA fails to meet that standard here.

40

"A curative instruction purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions." *Wiedeman v. Canal Ins. Co.*, 770 F. App'x 497, 500 (11th Cir. 2019)(internal quotation marks omitted). HMA's witness's testimony that the Genesis plan changed because it was "impossible" due to "dealer associations, and even DMVs" was elicited by HMA mere moments after a warning from the court that HMA's counsel better be certain the witness was not going to testify to that. (Doc. 285 at 35-36). This statement was clearly prejudicial, because it was tailored directly to HMA's defunct defense of legal impossibility.  In fact, The District Court stated "had [a mistrial] been requested at the time that Mr. Raphael blurted out 'impossibility,' I probably would have granted a mistrial. I thought it was egregious. I warned counsel." (Doc. 297 at 99).

Consequently, the curative instruction was warranted. In its post-trial Order, the District Court explained that it only gave the curative instruction "[a]fter a clear violation of this Court's pretrial orders regarding the impossibility defense that led to a witness giving testimony that performance was 'almost impossible…'" (Doc. 338 at 16).[14] Neither party requested a mistrial based on the witness' statement.

---

[14] The District Court warned HMA about impossibility testimony multiple times prior to this incident. (*See*, *e.g.*, Doc. 237 at 8 ("the Court cautions Defendants that they will not be permitted to attempt to relitigate the issue of impossibility at trial."); Doc. 274 at 92 ("I've made a ruling on the impossibility defense…if we start

41

HMA's argument that the evidence had independent relevance outside of impossibility entirely ignores the impact of Federal Rule of Evidence 403, which permits the exclusion of evidence, even relevant evidence, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

It also ignores why the challenged instruction was given in the first place—because HMA opened the door to an immensely prejudicial statement, after being warned by the court *multiple* times throughout this matter and during trial[15]. (*See*, *e.g.*, Doc. 197 at 18-19; Doc. 237 at 8; Doc. 274 at 92; Doc. 277 at 150-152). In any event, the District Court allowed evidence on:

- The DHSMV's involvement in open points;

- The creation of a line-make;

- DHSMV licensure;

- Distribution rights; and

- other topics not solely related to impossibility—

---

mentioning impossibility, then I'm inclined to give the instruction."); Doc. 277 at 150-152 ("you can't delve into the impossibility because I've already ruled."))

[15] The copious record of HMA's repeated attempts to inject impossibility into evidence should leave no doubt that impossibility was HMA's theory, and likewise, it remains their theory (albeit thinly disguised) on appeal.

(*See, e.g.,* Doc. 292 at 5-36; Doc. 282 at 19, 48, 104-105; 117, 121-122).  Indeed, HMA called Nalini Vinayak, DHSMV's Dealer Services Program Manager, who testified about technical advisories, Florida Statutes, legislative changes, dealer licensing, distributor licensing, and even open points. (Doc. 292 at 5-36). HMA was permitted to wade into every subject matter *other than impossibility*.

Furthermore, the curative instruction, on its face, does not tell the jury that any of this information cannot be considered. In fact, the instruction very narrowly told the jury "to disregard any testimony or evidence presented by Defendants that argues or implies that it was legally impossible for them to offer Plaintiffs one or more rights of first refusal…" (Doc. 303 at 18).  However, what HMA desperately sought at trial, and continues to seek through this appeal, is a defense that it did not breach the 2009 Agreement due to the DHSMV's actions—not a preservation of other arguments.  Alas, applicable law provides no basis for this defense, and HMA cites none.

Second, HMA has failed to show that the District Court's instruction was actually erroneous or that it suffered undue prejudice from the instruction in light of the circumstances under which it was provided. Instead, HMA harps on the fact that "the Florida DMV's actions involved 'the heart and guts of the case'" and even

admits that "GMA abandoned its initial plan and any open points in response to state regulators' resistance."[16] (Appellant Br. at 60).

HMA's argument defies logic. Surely, HMA is not suggesting that it based its trial strategy (or the heart and guts of the case) on an unavailable affirmative defense. As set forth above, HMA was permitted to present evidence through multiple witnesses about the creation of a line-make, distribution rights, how open points are created and the timing of GMA's distribution license. HMA was also permitted to question the DHSMV at trial via Ms. Vinayak. (*See* Doc. 292 at 5). HMA was only prohibited from going a step further to suggest that a condition could not come into being because of the DHSMV's actions to enforce an unambiguous and long-standing statute.

HMA's arguments do not demonstrate prejudice which would warrant a new trial—in fact, they are clear indicators that HMA is still arguing in support of its

---

[16] This position is also unavailing for other reasons. HMA's new "plan" remains a breach. HMA chose to establish Genesis and new Genesis dealerships with Genesis dealer agreements in the eight-county area and during the 10-year ROFR period. HMA did not offer Nero the opportunity to select which two Genesis dealerships in the eight-county area it selected, which is a breach. Thus, even if HMA "abandoned" its initial plan, it still established a luxury line-make and new Genesis dealerships without providing Nero the opportunity to select the dealerships to which it was entitled. In fact, during the application process HMA granted a Genesis franchise in Jacksonville, Florida despite that location not being a current Hyundai dealer at the time of the DHSMV ruling. (Doc. 280 at 18-19). This demonstrates that it was possible for HMA to grant Nero Genesis open points.

defunct legal impossibility defense, rather than against the propriety of the curative instruction. HMA's arguments also fail to demonstrate error or prejudice as the District Court properly dispatched the legal impossibility defense, and HMA does not challenge that ruling in this appeal. HMA cannot be prejudiced by a legally proper curative instruction necessitated by its own actions at trial—the purpose of the instruction was to cure the prejudice *caused by HMA*.  In fact, the only "prejudice" that HMA points to is that Nero "'reinforced the improper jury instruction' at closing argument." (Appellant Br. at 61). Again, it must be noted that HMA failed to lodge any objections to Nero's closing arguments, and that HMA's "failure to object to the statements either during closing argument or right after argument ended undermines any claim that those statements were so prejudicial as to warrant a new trial." *Wallace*, 745 F. App'x at 359.

What HMA actually wanted, and what it asked for at trial, was an instruction to allow jurors to consider impossibility "in deciding whether the conditions preceding the right of first refusal occurred" even though the defense of legal impossibility was not available. (Doc. 297 at 96). Nero correctly concluded that this would "gut" the jury instruction on impossibility because HMA could just argue that "the conditions didn't actually occur" as a result of the foreclosed impossibility defense. *Id.* The District Court agreed, concluding that HMA was asking the court

"to tell [the jury] that you don't get to say it was impossible, but consider it was impossible with regard to these [conditions precedent]." (*Id.* at 97). HMA did not disagree with the statements made by Nero or the District Court's, but maintained its objection nonetheless. (*Id.* at 96-100).

### B. The District Court Did Not Ignore HMA's Argument.

HMA also argues that the District Court improperly enforced forfeiture and declined to address the merits of its argument against the curative impossibility instruction in its post-trial ruling. (Appellant Br. at 62). However, HMA failed to provide any authority showing the instruction in question was an incorrect statement of the law. HMA relies heavily on *Christopher v. Cutter Lab'ys*, which stands for the proposition that it is "critical that the court properly guide the jury as to the standard to be applied" when a defense is "the heart of [the party's] defense." *Christopher v. Cutter Lab'ys*, 53 F.3d 1184, 1192 (11th Cir. 1995). However, *Cutter Lab'ys* also provides that a party is only entitled "to have the court instruct the jury on the theory of the defense, as long as it has some basis in the evidence and has legal support." 53 F.3d at 1195. *Cutter Lab'ys* would be helpful to HMA, except it is entirely inapposite because the legal impossibility defense upon which HMA relied at trial was factually and legally unavailable, having been disposed of at summary judgment. HMA also points to another case, *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365(5th Cir. 1981). However, in *Miller* an actual "erroneous

46

statement of law" was identified within the jury instructions. *Id.* at 1372. HMA has not identified any part of the jury instruction in question which it contends to be a misstatement of the applicable law. As such, the District Court properly concluded that HMA failed to provide authority supporting its argument.

HMA's claim that the District Court should not enforce forfeiture *sua sponte* fares even worse. First, HMA misreads the sole authority cited*, United States v. Campbell*, as it actually states that courts may only "**resurrect** forfeited issues *sua sponte* in 'extraordinary circumstances'", and not that a court can only enforce forfeiture *sua sponte* in extraordinary circumstances. *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (en banc) (emphasis added). In fact, *Campbell* actually stands for the opposite of what HMA argues, stating that forfeiture "occurs automatically whenever a party fails to timely assert their rights." *Id.* at 874 (internal quotation marks omitted)*; see also Gabriel v. Windy Hill Foliage Inc.*, No. 21-12901, 2022 WL 2288687, at *1 (11th Cir. 2022) ("Forfeiture occurs automatically whenever a party fails to timely assert their rights.") As such, the District Court is clearly permitted to enforce forfeiture *sua sponte.*

## V.    THE DISTRICT COURT PROPERLY DENIED JUDGMENT AS A MATTER OF LAW ON ANTICIPATORY BREACH.

The anticipatory breach claim in this matter was an alternative to the breach of contract and breach of good faith and fair dealing claims. Because the jury

returned a verdict on the breach claims, no verdict was reached on anticipatory breach. The District Court also determined that this issue was not timely raised and thus forfeited. (Doc. 338 at 4-5). Accordingly, the Court need only decide the anticipatory breach issues *if* it grants HMA judgment as a matter of law on the other contract claims *and* determines that the issue was preserved.

Even if the Court reaches the merits of HMA's arguments, contrary to HMA's assertions, the 2009 Agreement is not nor was it ever a unilateral contract. HMA advances the same arguments it made at trial, insisting that the 2009 Agreement became unilateral once Nero performed his "one obligation", and that the doctrine of anticipatory breach does not apply to unilateral contracts. This argument fails because: (1) Nero had more than one obligation under the 2009 Agreement, entirely mooting HMA's "conversion" theory; (2) HMA has failed to provide any authority that a contract can convert from bilateral to unilateral contract under these circumstances such that anticipatory breach does not apply; and (3) even if HMA is correct, Florida has created an exception which allows the doctrine of anticipatory breach to apply to unilateral contracts where there is additional jeopardy.

First, HMA's unilateral contract argument hinges on Nero having only "one obligation" under the agreement—to dismiss the then-existing lawsuit, which Nero did. (Appellant Br. at 64). However, that was not the end of Nero's obligations.

48

HMA ignores Nero's additional obligations listed in Exhibit "A" to the 2009 Agreement (entitled "Procedures, Rights, Responsibilities, and Obligations…") (Doc. 84-1 at 11). These obligations include, but are not limited to:

- delivering written notice to HMA of Nero's election of rights of first refusal;

- if the rights are exercised, obtaining suitable property;

- obtaining HMA's approval of any proposed location;

- providing a suitable facility;

- meeting HMA's working capital requirements; executing a standard HMA agreement; and

- potentially paying HMA one million dollars if Nero does not "comply with the terms of this Agreement." (*Id.* at 11-15).

As Nero had additional continuing obligations under the 2009 Agreement, even after dismissing the then-existing lawsuit, the contract remained bilateral and thus the anticipatory breach claim remains legally valid.

Second, HMA has failed to provide any authority that a contract can convert from a bilateral to a unilateral contract, and that such conversion can be grounds for the anticipatory breach doctrine to become inapplicable.[17] HMA has provided no

---

[17] HMA only cites to the superseded *Restatement (First) of Contracts* § 318 (1932) for the proposition that a contract can convert from bilateral to unliteral, and that such conversion precludes the application of anticipatory breach. However, even the

cases demonstrating this proposed conversion of a contract from bilateral to unilateral, despite being asked directly by the District Court if it had "a case where a bilateral contract becomes a unilateral contract", as the question remained as to under what circumstances that actually occurs. (Doc. 297 at 67). Instead, HMA has cited cases demonstrating the inverse proposition, that a unilateral contract can become a bilateral contract. (Doc. 318 at 16); *see Lupetto, Inc. v. S. Bay Devs. Grp., LLC,* 302 So. 3d 1061, 1063 (Fla. 3d DCA 2020) (holding that where there is an "option to purchase", furnishing notice converts the contract to a bilateral contract). This is problematic for HMA, because even if Nero's dismissal of the then-existing suit made the 2009 Agreement unilateral, Nero's subsequent furnishing of notice to exercise the right of first refusal would have converted the 2009 Agreement right back to a bilateral contract. [18] *See Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 600 (Fla. Dist. Ct. App. 2019) ("[i]n the context of an option to purchase property, it is not until the option holder manifests to the owner a desire to purchase the property that a bilateral contract exists.")

---

first restatement requires that the contract become unilateral and unconditional by "full performance by one party." As explained, full performance by Nero never occurred because he had remaining obligations under the agreement.

[18] Nero repeatedly indicated his desire to avail himself of the rights promised in the 2009 Agreement through a series of letters sent to HMA. (Doc. 305-3 at 1; Doc. 305-5 at 1; Doc 305-6 at 1-2).

Finally, HMA cannot explain why the "jeopardy" exception created under Florida law does not apply. *See Poinciana Hotel of Miami Beach, Inc. v. Kasden*, 370 So. 2d 399, 401 (Fla. Dist. Ct. App. 1979) (holding that anticipatory breach is applicable to unilateral contracts where some kind of additional jeopardy exists such that "time was of the essence…in protecting their interest…"); *Haelterman v. Haelterman*, 846 So. 2d 1229, 1230 (Fla. Dist. Ct. App. 2003) (noting the "Third District has recognized a limited exception to the general rule when jeopardy to the obligee is imminent.").

Nero's rights under the 2009 Agreement effectively granted a "pick of the litter" for the first two Genesis dealerships in the Eight-County Area. As has been repeatedly testified to, at the time this lawsuit was filed there were no Genesis dealerships. (Doc. 280 at 18; Doc. 282 at 48, 85; Doc. 285 at 6, 71-72; Doc. 292 at 29). Thus, at the time the lawsuit was filed, specific performance *was available* to Nero, and the Complaint sought specific performance. (Doc. 1 at 17, 19-21, 23). Jeopardy to Nero's interests existed due to the potential that Nero might lose ability to obtain specific performance, demonstrating that "time was of the essence for [Nero] in protecting their interest against the inherently time-consuming exigencies of the threatened [breach]." *Poinciana*, 370 So. 2d at 402. This lawsuit was swiftly

51

filed ten (10) days after the March 2, 2018 announcement of the Initial Markets[19]

precisely because of the imminent jeopardy to Nero and the ability to be the *first*

Genesis dealer in a prime luxury market.

Accordingly, application of the general rule would not serve its intended

purpose in this instance, as Nero's rights were in jeopardy such that time was of the

essence in protecting the interest.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the judgment against HMA

and deny HMA's request for a new trial.

---

[19] The original Complaint was filed 10 days later on March 12, 2018. (*See* Doc. 1).

Respectfully Submitted,

*/s/ Nicholas A. Bader*

Nicholas A. Bader
Jason T. Allen
Jeremiah M. Hawkes
Andrew G. Thomas
BASS SOX MERCER
2822 Remington Green Circle
Tallahassee, Florida 32308
850.878.6404
nbader@bsm-law.com.com
jallen@bsm-law.com
jhawkes@bsm-law.com
athomas@bsm-law.com

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 12,519 words.

2.      This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Office in Times New Roman 14-point font.

/s/ *Jason T. Allen*
Jason . Allen

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2023, I caused a copy of the foregoing to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ *Jason T. Allen*
Jason . Allen