No. 22-13153

In The

# United States Court of Appeals
# For the Eleventh Circuit

ACTION NISSAN, INC. D/B/A/ UNIVERSAL HYUNDAI &

WILLIAM NERO,

*Plaintiffs-Appellees*,

v.

HYUNDAI MOTOR AMERICA,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Middle District of Florida, Orlando
Division, No. 6:18-cv-380-ORL-78EJK

## REPLY OF APPELLANT HYUNDAI MOTOR AMERICA

JESSICA L. ELLSWORTH
NATHANIEL A.G. ZELINSKY
EZRA P. LOUVIS
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com

*Counsel for Appellant Hyundai Motor America*

April 25, 2023

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellant Hyundai Motor America certifies that the following persons and entities have or may have an interest in the outcome of this case:

Abbot Nicholson PC

Action Nissan, Inc. d/b/a Universal Hyundai

Allen, Jason Todd

Bader, Nicholas A.

Baiardi, Kristen L.

Bass Sox Mercer

Berger, Wendy W. (United States District Judge)

Bertron, James Andrew

Bressler Amery & Ross, P.C.

Chase, Eric L.

Chiappa, Carl J.

Elias, Antonio M.

Ellsworth, Jessica L.

Florida Automobile Dealers Association

Florida Department of Highway Safety and Motor Vehicles

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

Ford, Ryan L.

Gelbord, Brett M.

Genesis Motor America

Hogan Lovells US LLP

Hyundai Motor America

Hyundai Motor Company (LSE: HYUD; KRX: 005380)

Irick, Daniel C. (United States Magistrate Judge)

Kennedy, Ellen S.

Kidd, Embry J. (United States Magistrate Judge)

Killgore, Frank H. (Jr.)

Killgore, Pearlman, Semanie, Denius & Squires, P.A.

Kynoch, Robert R.

Louvis, Ezra P.

Lund, Matthew J.

McDonald Toole Wiggins, PA

Mendoza, Carlos E. (United States District Judge)

Nelson Mullins Riley & Scarborough, LLP

Nero, William

Paretti, Kenneth L.

Quinton & Paretti, P.A.

*Action Nissan, Inc., et al. v. Hyundai Motor America*, No. 22-13153

Quinton, A. Edward

Sabbert, Gerd W. (Jr.)

Sanford, Jonathan P.

Schwartz Legal, PLLC

Schwartz, Jonathan Cary

Semanie, Michael A.

Smith, Thomas B. (United States Magistrate Judge)

Sox, Richard

Troutman Pepper Hamilton Sander LLP

Urban Science Applications, Inc.

Vinayak, Nalini

Whitesell, S. Lee

Wiggins, Michael J.

Zelinsky, Nathaniel A.G.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ....................................................C-1

TABLE OF CITATIONS ................................................................................. ii

INTRODUCTION ..........................................................................................1

ARGUMENT ..................................................................................................5

I.     NERO'S FOCUS ON IMPOSSIBILITY SHOWS WHY
HMA DESERVES A NEW TRIAL..........................................................5

II.    THE DISTRICT COURT FAILED TO PROPERLY
INSTRUCT THE JURY ABOUT THE CONDITIONS
PRECEDENT ......................................................................................12

    A.    All Three Conditions Precedent Needed To Exist
Simultaneously ................................................................................12

    B.    The Court Should Grant HMA Judgment On The
Breach Of Contract Claim...............................................................19

    C.    At A Minimum, The Court Should Grant A New Trial.................22

III.   NERO'S ANTICIPATORY BREACH CLAIM IS
LEGALLY FLAWED ............................................................................24

CONCLUSION .............................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF CITATIONS

**Page(s)**

CASES:

\* *Allegro at Boynton Beach, L.L.C. v. Pearson*,
  287 So. 3d 592 (Fla. Dist. Ct. App. 2019)..........................................................25

*Barot v. Aldon Mgmt.*,
  No. 20-7083, 2021 WL 7369141 (D.C. Cir. Oct. 19, 2021)..............................10

\* *Brink v. Direct Gen. Ins. Co.*,
  38 F.4th 917 (11th Cir. 2022) ..................................................................22, 23, 24

\* *Christopher v. Cutter Lab'ys*,
  53 F.3d 1184 (11th Cir. 1995) ......................................................................*passim*

*Dear v. Q Club Hotel, LLC*,
  933 F.3d 1286 (11th Cir. 2019) ..........................................................................16

*Diamond v. Univ. of S. California*,
  89 Cal. Rptr. 302 (Cal. Ct. App. 1970)................................................................25

*Edmondson v. Velvet Lifestyles, LLC*,
  43 F.4th 1153 (11th Cir. 2022) ..............................................................................8

*Elzubier v. Sony Music Holdings, Inc.*,
  564 F. App'x 545 (11th Cir. 2014)................................................................10, 23

*Farley v. Nationwide Mut. Ins. Co.*,
  197 F.3d 1322 (11th Cir. 1999) ..........................................................................10

*Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*,
  21 F.4th 1267 (11th Cir. 2021) ...........................................................................23

*Gen. Star Indem. Co. v. W. Florida Vill. Inn, Inc.*,
  874 So. 2d 26 (Fla. Dist. Ct. App. 2004).............................................................15

*Gold Crown Resort Marketing Inc. v. Phillpotts*,
  272 So. 3d 789 (Fla. Dist. Ct. App. 2019)...........................................................16

\* Per Local Rule 28-1(e), authorities upon which we primarily rely are marked with an asterisk.

## TABLE OF CITATIONS—Continued

**Page(s)**

*Haelterman v. Haelterman*,
   846 So. 2d 1229 (Fla. Dist. Ct. App. 2003) ..................................................26, 27

*Howard v. Walgreen Co.*,
   605 F.3d 1239 (11th Cir. 2010) ...................................................................10, 23

*Interline Brands, Inc. v. Chartis Specialty Ins. Co.*,
   749 F.3d 962 (11th Cir. 2014) ..............................................................................15

*Lambert v. Berkley S. Condo. Ass'n*,
   680 So. 2d 588 (Fla. Dist. Ct. App. 1996) ........................................................15

*Mark Seitman & Assocs., Inc. v. R.J. Reynolds Tobacco Co.*,
   837 F.2d 1527 (11th Cir. 1988) ..........................................................................10

*MidlevelU, Inc. v. ACI Info. Grp.*,
   989 F.3d 1205 (11th Cir. 2021) ............................................................................8

\* *Miller v. Universal City Studios, Inc.*,
   650 F.2d 1365 (5th Cir. July 1981).......................................................7, 9, 22, 23

\* *Nat'l Indus., Inc. v. Sharon Steel Corp.*,
   781 F.2d 1545 (11th Cir. 1986) ..........................................................................21

*Poinciana Hotel of Miami Beach, Inc. v. Kasden*,
   370 So. 2d 399 (Fla. Dist. Ct. App. 1979) .............................................21, 25, 27

\* *Quinn v. Sw. Wood Prods., Inc.*,
   597 F.2d 1018 (5th Cir. 1979) ............................................................................21

\* *SEC v. Yun*,
   327 F.3d 1263 (11th Cir. 2003) ...........................................................7, 9, 22, 23

*Travelers Indem. Co. of Connecticut v. Richard McKenzie & Sons, Inc.*,
   10 F.4th 1255 (11th Cir. 2021) ...........................................................................15

*United States v. 0.161 Acres of Land, more or less, situated in City of
   Birmingham*,
   837 F.2d 1036 (11th Cir. 1988) ...........................................................................9

## TABLE OF CITATIONS—Continued

**Page(s)**

*United States v. Campbell*,
   26 F.4th 860 (11th Cir. 2022) (en banc) ............................................................11

**RULES:**

Fed. R. Civ. P. 50 .................................................................................................5

Fed. R. Civ. P. 50(a)............................................................................................20

Fed. R. Civ. P. 50(b) ...........................................................................................24

Fed. R. Evid. 403 ..............................................................................................8, 9

**OTHER AUTHORITIES:**

\* *Restatement (First) of Contracts* § 318 (1932) .....................................................25

\* *Restatement (Second) of Contracts* § 253 cmt. c (1981).......................................25

# INTRODUCTION

In 2009, Hyundai Motor America ("HMA") and William Nero entered into an agreement. If three specific preconditions occurred, HMA owed Nero rights of first refusal to two dealerships for a potential new luxury motor vehicle line-make. If the three preconditions were not met, the agreement expired in August 2019.

Fast forward to 2018. Hyundai decided to transform its existing "Genesis" vehicles into a separate "Genesis" line-make with standalone "Genesis" dealers. But multiple state regulators objected. The Florida DMV refused to license a Genesis line-make unless every Hyundai dealer could continue selling Genesis vehicles as "Genesis dealers" at their existing locations. The plan for new, standalone Genesis dealers failed. Instead, in Florida and elsewhere, existing Hyundai dealers continued selling Genesis vehicles, same as before.

But this story was not over. In March 2018, Nero preemptively sued HMA, claiming that HMA had both anticipatorily breached and actually breached the 2009 agreement. As Nero puts it, HMA owed him "a 'pick of the litter' for the first two Genesis dealerships"—regardless of the fact that plans for standalone Genesis dealerships never got off the ground, and Hyundai continued distributing Genesis vehicles through the existing dealer network. Response Br. 51.

When it came time to litigate the case in 2021, the Florida DMV was the center of the story. *First*, the DMV's actions explained why a key condition precedent—

1

the existence of "open points" which HMA might offer Nero—had not been fulfilled. The DMV had required Hyundai to continue distributing Genesis vehicles through the existing dealer network. As a result, no Genesis "points" were "open." *Second*, until summary judgment, HMA had asserted a separate affirmative defense of legal impossibility. According to that doctrine, even if all three preconditions had somehow arisen by August 2019, the DMV's ruling made it legally impossible to perform.

In short, the DMV's actions were independently relevant to both the factual question of breach and the affirmative defense of legal impossibility. But they were separate issues. The District Court ordered trial on *breach*—whether all three conditions precedent had existed, and thus whether HMA had an obligation to Nero. The District Court only prohibited HMA from asserting the doctrinal defense of *legal impossibility*.

Consistent with the centrality of the DMV to this case, the District Court also rejected Nero's motion to exclude evidence about the Florida DMV. HMA prepared to tell its story to the jury: Because of the DMV's ruling, Hyundai did not need additional Genesis representation, no Genesis "open points" existed, and a key condition precedent never arose. Nero's brief on appeal now confirms that the resulting trial over breach was critically flawed in three respects.

2

*First*, the District Court's impossibility instruction directed the jurors that "evidence" about the Florida DMV's actions "should not be given *any* weight." Doc. 303 at 18 (emphasis added).[1] Nero agrees with HMA about what this instruction meant: The District Court prevented HMA from arguing "that a condition"—the existence of open points—"could not come into being because of the [DMV's] actions." Response Br. 44.

But what Nero sees as a virtue—preventing the jury from considering HMA's argument about open points—was a fundamental legal error. Evidence can be relevant to more than one thing. In this case, the Florida DMV's actions were critically relevant to the existence of open points, not just the doctrinal defense of legal impossibility. As Nero explained at trial and as he candidly admits to this Court, the instruction gutted HMA's "whole case." Doc. 307 at 78.

Given that Nero agrees with HMA on what this instruction meant, there is little doubt the jury was misled. Nero has no meaningful response. Instead, he *praises* the District Court for its sweeping instruction, and the enormous prejudice HMA suffered. This Court should grant a new trial for this reason alone.

*Second*, the DMV's actions were especially relevant because of how Nero sandbagged HMA and altered his theory at the last moment. On the penultimate day of trial, for the first time, Nero declared "the actual breach" occurred in "January

---

[1] District Court record page references are to the page number in the ECF header.

2019." Doc. 297 at 62. Until that point, Nero had always alleged that all three conditions existed in March 2018. This sudden shift mattered because the contract involved multiple conditions precedent. HMA only owed Nero an obligation if all three preconditions *actually existed* at the time of the alleged breach.

HMA immediately identified the key problem with Nero's new theory: Once Nero shifted his theory of breach, the timeline did not line up. Nero's evidence of "open points" was a letter from March 2018 inviting Hyundai dealers to indicate their interest in establishing standalone Genesis dealerships. HMA completely abandoned that plan—and maintained its existing dealer network—because of state regulators' rulings. Meanwhile, in front of the jury, Nero argued that the two other conditions precedent *did not arise* until October 2018. Doc. 307 at 15-16. By Nero's *own account*, the three conditions precedent did not exist simultaneously, and HMA never owed Nero a right of first refusal.

 Based on Nero's own presentation to the jury, this Court should grant HMA judgment as a matter of law. At a minimum, the District Court's complete refusal to interpret the contract and properly instruct the jury also requires a new trial.

Nero now claims he did not change his position, and always argued that breach occurred in March 2018. Wrong. At the jury conference, Nero clearly told the judge "the actual breach, Your Honor, is January 2019." Doc. 297 at 62. Before the jury,

Nero expressly argued that two preconditions did not occur until October 2018.[2] *See* Doc. 307 at 15-16. And after trial, Nero sought and received prejudgment interest based on breach occurring "January 1, 2019." Doc. 317 at 4; Doc. 330 at 2. Nero altered his theory. Full stop. Litigation should not be trial by surprise. This Court should not reward Nero's gamesmanship.

*Third*, if the Court grants HMA relief on the breach of contract claim, the Court should grant HMA judgment on anticipatory breach too. Nero does not defend the District Court's erroneous interpretation of Federal Rule of Civil Procedure 50, which was the sole basis for the decision below. And it is blackletter law that a party cannot be liable for anticipatory breach in this context.

## ARGUMENT

## I. NERO'S FOCUS ON IMPOSSIBILITY SHOWS WHY HMA DESERVES A NEW TRIAL.

Time, time, and time again, Nero says the quiet part out loud: The impossibility instruction prevented HMA from arguing that there were no Genesis "open points" as a result of the DMV's actions. In Nero's own words, the District Court prevented HMA from arguing "that a condition could not come into being because of the [DMV's] actions." Response Br. 44. Indeed, Nero implies there was no need for a trial at all. As he sees it, *everything* boils down to an impossibility

---

[2] The DMV issued its license in October 2018, effective January 2019. Doc. 292 at 24, 28.

defense. *Id*. at 11-15; *see also, e.g.*, *id*. at 17 n.5. Because Nero agrees with HMA on the prejudice HMA suffered from the District Court's impossibility instruction, this Court should at a minimum order a new trial, where HMA can fairly present its case.

The Florida DMV's actions were critically relevant to whether Genesis open points existed. HMA defined an open point as a "geographical area in which a line-make *is not currently represented* but where *the manufacturer wants the line-make to be represented*." Doc. 303 at 12 (emphases added). Nero defined an open point as "a location or area where an automotive manufacturer or distributor *desires to add an additional* motor vehicle dealership." *Id*. at 11. (emphasis added). Both of these definitions revolved around HMA and its subsidiary's desire for additional Genesis representation.

The jury needed to consider the Florida DMV's actions to evaluate whether Hyundai wanted more Genesis representation. The Florida DMV had required Hyundai to maintain the existing dealer network for Genesis vehicles. As a result, Hyundai did not want additional representation in the eight Florida counties. Hyundai already had too much preexisting Genesis representation. There were thus no Genesis "open points"—and certainly none by October 2018 or January 2019, which is when Nero argued breach occurred.

The District Court prevented the jury from considering HMA's argument. Instead, the District Court instructed jurors that "the actions of the Florida Department of Highway Safety and Motor Vehicles" "should not be given any weight in your deliberations." *Id.* at 18. As Nero freely admits, that instruction prevented jurors from considering HMA's theory about open points. *See, e.g.*, Response Br. 17 n.5, 44-46. Indeed, the instruction functionally directed a verdict for Nero on this issue. That was why Nero read the impossibility instruction verbatim in his rebuttal, Doc. 307 at 73, and argued it eviscerated HMA's "whole defense," *id.* at 78.

This Court has ordered new trials when prejudice was obvious because opposing counsel emphasized an erroneous instruction in closing argument. *See, e.g.*, *SEC v. Yun*, 327 F.3d 1263, 1282 (11th Cir. 2003); *Christopher v. Cutter Lab'ys*, 53 F.3d 1184, 1194-95 (11th Cir. 1995); *see also Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir. July 1981). The Court should do the same here.

Nero's scattered justifications for the impossibility instruction fall apart under scrutiny. *First*, as a threshold matter, Nero suggests HMA contests the impossibility instruction—and everything else in this appeal—only because HMA "failed to preserve" any "appeal" to "the District Court's summary judgment ruling" on impossibility. Response Br. 11. Nero's theory is meritless. Nothing would have

prevented HMA disputing in this Court the District Court's grant of summary judgment on impossibility. *See, e.g.*, *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1161 (11th Cir. 2022). To be clear: HMA does *not* challenge that summary judgment ruling in this Court. But Nero's theory reinforces his fundamental error: He conflates any argument "premised on the [DMV's] conditions of licensure" with "HMA's impossibility defense." Response Br. 15. That is incorrect. The DMV's actions were independently relevant to the existence of open points.

*Second*, Nero implies HMA's counsel committed intentional misconduct, and suggests misconduct justified the District Court's instruction. *See id.* at 40-41. But the District Court did not "for one second believe" defense counsel intended a witness to violate the court's order. Doc. 297 at 99.

*Third*, Nero justifies the impossibility instruction as a curative measure. *See* Response Br. 40-41. But labeling an instruction "curative" does not immunize it from appellate review. This Court reviews the legal accuracy of all jury instructions *de novo*. *See MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1215 (11th Cir. 2021). This instruction misstated the law, "misled" the jury, and warrants a new trial. *Cutter Lab'ys*, 53 F.3d at 1190-91.

*Fourth*, Nero invokes Federal Rule of Evidence 403. Response Br. 42. But the District Court did not rely on Rule 403 to justify this sweeping instruction. For good reason. Rule 403 only permits the exclusion of evidence when the risk of unfair

8

prejudice substantially outweighs probative value. *See* Fed. R. Evid. 403. This test rarely bars evidence which "is undeniably probative of a central issue in the case." *United States v. 0.161 Acres of Land, more or less, situated in City of Birmingham*, 837 F.2d 1036, 1041 (11th Cir. 1988) (ordering new trial). The evidence about the Florida DMV was critical to HMA's theory that no open points existed. Jurors needed to consider HMA's evidence to fairly adjudicate this case.[3]

*Fifth*, Nero similarly suggests that, because the District Court allowed some testimony about the DMV, the District Court did enough. Response Br. 42. But it does not matter whether jurors initially heard *some* limited evidence. Nero agrees the impossibility instruction prevented jurors from considering *any* such evidence in deliberations. *Id*. at 44.

*Sixth*, Nero argues that HMA should have also objected when Nero emphasized the impossibility instruction in his rebuttal. *Id*. at 45. But the jury instruction is the error which necessitates a new trial. The degree to which Nero emphasized the erroneous instruction demonstrates the extent of prejudice HMA suffered from the instruction. *See Yun*, 327 F.3d at 1282; *Cutter Lab'ys*, 53 F.3d at 1195; *Miller*, 650 F.2d at 1372. HMA vigorously objected to the impossibility

---

[3] The District Court cited Rule 403 to justify *limiting* the extent of HMA's questioning about the DMV—which was a separate error. *See* Doc. 338 at 16; Opening Br. 49; *0.161 Acres*, 837 F.2d at 1041. The impossibility instruction forbade jurors from considering what limited evidence they heard.

instruction, the District Court considered the objection, and the District Court rejected it. Doc. 297 at 95-100. Nero does not dispute this course of events fully preserved HMA's objection to the instruction. *See also Mark Seitman & Assocs., Inc. v. R.J. Reynolds Tobacco Co.*, 837 F.2d 1527, 1530 & n.3, 1531-32 & n.5 (11th Cir. 1988).

In any event, HMA "ha[d] made its position clear to the court previously and further objection" during Nero's argument "would [have been] futile." *Elzubier v. Sony Music Holdings, Inc.*, 564 F. App'x 545, 547 (11th Cir. 2014) (per curiam) (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999)). And regardless, Nero's opposition to HMA's post-trial motion did not argue that HMA needed to object during his rebuttal. *See* Doc. 323 at 15-17. Nero thus forfeited any such argument here. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1243-44 (11th Cir. 2010) (enforcing similar forfeiture).

*Seventh*, Nero separately tries to rehabilitate the District Court's theory that HMA forfeited its challenge to the instruction in its post-trial motion. But Nero again "forfeited any potential forfeiture argument" in the District Court. *Barot v. Aldon Mgmt.*, No. 20-7083, 2021 WL 7369141, at *1 (D.C. Cir. Oct. 19, 2021) (per

curiam).  The District Court erred in *sua sponte* enforcing a forfeiture argument Nero did not pursue.[4]

HMA also did not forfeit anything in its post-trial motion.  Nero does not contest that HMA's briefing on this issue spanned multiple pages, or that he responded to HMA's argument.  *See* Opening Br. 50.  Instead, Nero argues "that HMA failed to provide authority supporting its argument."  Response Br. 47.  But HMA explained *why* evidence about the DMV was relevant to its case, articulated *how* the District Court's instruction erred, and cited precedent demonstrating that opposing counsel's repetition of an erroneous instruction indicates prejudice.  Doc. 318 at 19-22.  That fulsomely preserved this critical issue.

* * *

Nero and HMA see eye-to-eye on the prejudice HMA suffered:  The District Court's instruction prevented jurors from considering the Florida DMV's actions to determine whether open points existed.  That instruction was legally erroneous.  At a minimum, this Court should order a new trial, where HMA can fairly present its case.

---

[4] A forfeiture argument is like any other non-jurisdictional argument which Nero could forfeit.  *United States v. Campbell*, 26 F.4th 860 (11th Cir. 2022) (en banc), confirms that courts ought not "resurrect" forfeited arguments "*sua sponte*" absent "extraordinary circumstances," *id.* at 872 (internal quotation marks omitted); *see* Response Br. 47.

## II.    THE DISTRICT COURT FAILED TO PROPERLY INSTRUCT THE JURY ABOUT THE CONDITIONS PRECEDENT.

HMA separately deserves judgment as a matter of law, or at minimum a new trial, because all three conditions precedent had to simultaneously exist for there to be a breach of contract.  Until the penultimate day of trial, Nero had argued all three preconditions coexisted—and breach occurred—in March 2018.  At the charge conference, Nero suddenly shifted course and declared breach occurred in January 2019.  HMA immediately identified the problem with Nero's new theory:  His timeline did not match up.  Based on Nero's own theory of this case, HMA deserves judgment as a matter of law.  At the very least, HMA deserves a new trial.  The District Court should have interpreted the contract and instructed the jury that all three conditions needed to exist simultaneously.

### A.    All Three Conditions Precedent Needed To Exist Simultaneously.

Everyone agrees HMA had an obligation to Nero if—and only if—three conditions precedent arose by August 2019: (1) there were open points, (2) for a new luxury line-make, (3) for which HMA possessed the rights of distribution.  Under the only reasonable reading of the contract, each precondition must actually exist for HMA to owe Nero a right of first refusal.  There must be *actual* open-points, for an *actual* line-make, for which HMA *actually* has rights of distribution.  If one of these preconditions did not exist, HMA had nothing to offer Nero.

This commonsense conclusion flows from the contract's text.  Section 10 grants Nero a conditional "right of first refusal *to be appointed* as a dealer for two (2) *open points* for any new *luxury motor vehicle line-make*."  Doc. 84-1 at 5 (emphases added).  This key language links all three conditions together.  Opening Br. 32-33.  Open points do not exist in the abstract; open points represent dealership locations for a "new luxury motor vehicle line-make."  Likewise, the words "to be appointed" imply that HMA must presently possess the ability to officially name Nero a dealer.  *Id*. at 33.

Section 10 further states that the right of first refusal exists only if HMA "is granted" distribution rights.  Doc. 84-1 at 5.  The present tense confirms that HMA must actually possess rights of distribution at the time that Nero gains his rights of first refusal.  Opening Br. 33 (citing caselaw).

This reading of Section 10 makes sense: Parties do not chose conditions precedent randomly.  In this case, the conditions reflected practical factors that would enable HMA to offer, and Nero to accept, formal appointment to open points for a luxury dealership.  Because each condition would enable HMA to perform its obligations, each must have actually existed.

HMA's reading of Section 10 is further confirmed by Section 11 and Exhibit A.  Section 11 explains what happens if Hyundai establishes a new luxury line-make but grants distribution rights to an entity other than HMA (or HMA's subsidiary).

13

Like Section 10, Section 11 is written in the present tense, and confirms that the obligation only exists "if and when all of the" preconditions "are satisfied." Doc. 84-1 at 6; *see* Opening Br. 33-34. Meanwhile, Exhibit A establishes a detailed process by which: HMA notifies Nero of his rights of first refusal; Nero may choose to accept the offer and select open points; Nero obtains licensing; and Nero executes a dealer agreement. Doc. 84-1 at 11-15. That highly-choreographed process contemplates each of the three preconditions—open points, a luxury line-make, and rights of distribution—actually existing in tandem. Opening Br. 34.

Nero did not dispute this commonsense reading of Section 10 until the very end of trial. Instead, throughout this case, Nero alleged all three conditions coexisted and breach occurred in March 2018. *See, e.g.*, Doc. 1 at 16 (complaint alleging breach in March 2018); Doc. 197 at 8 (summary judgment opinion recognizing that parties disputed whether open points existed, and breach occurred, in March 2018).

But after testimony had concluded, Nero altered course. For the first time, Nero argued "the actual breach, Your Honor, is January 2019"—when the DMV's license became effective. Doc. 297 at 62. Before the jury, Nero argued that the "line-make" and "rights of distribution" conditions were not fulfilled until October 2018—when the DMV issued its license. Doc. 307 at 15-16. Meanwhile, Nero's chief evidence of "open points" remained the March 2018 letter inviting Hyundai dealers to indicate interest in establishing a standalone Genesis dealership—a plan

abandoned in the face of regulatory resistance, in favor of maintaining the existing network already selling Genesis vehicles. *Id.* at 10, 13-14. Once Nero changed course, HMA immediately identified the defect in that new theory: The contract requires all three conditions precedent to actually exist at the same time. Doc. 297 at 84-89.

Nero disputes HMA's interpretation of the 2009 agreement, but his counterarguments are meritless. *First*, like the District Court, Nero does not engage with HMA's textual analysis. Instead, Nero argues that anytime a court must analyze a text, the text is ambiguous and should be interpreted by a lay jury. *See* Response Br. 23. But that is not the law. As this Court has explained, language "is not ambiguous merely because it requires analysis to interpret it." *Interline Brands, Inc. v. Chartis Specialty Ins.* Co., 749 F.3d 962, 965 (11th Cir. 2014) (per curiam) (quoting *Gen. Star Indem. Co. v. W. Florida Vill. Inn, Inc.*, 874 So. 2d 26, 31 (Fla. Dist. Ct. App. 2004)); *see also, e.g.*, *Travelers Indem. Co. of Connecticut v. Richard McKenzie & Sons, Inc.*, 10 F.4th 1255, 1264 (11th Cir. 2021).

Instead, whether "a document is ambiguous depends upon whether it is *reasonably susceptible* to more than one *interpretation*." *Lambert v. Berkley S. Condo. Ass'n*, 680 So. 2d 588, 590 (Fla. Dist. Ct. App. 1996) (emphases added). That an agreement "may not have been as artfully drafted" "as it could have been" "does not create an ambiguity." *Gen. Star Indem.*, 874 So. 2d at 31.

15

The two cases Nero cites confirm courts should not shy away from analyzing text. In *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286 (11th Cir. 2019), this Court "unpack[ed] the relevant portions" of a contract "bit by bit." *Id.* at 1294. And in *Gold Crown Resort Marketing Inc. v. Phillpotts*, 272 So. 3d 789 (Fla. Dist. Ct. App. 2019), a Florida Appellate Court examined the language of a forum selection clause to determine its meaning. *Id.* at 793. The District Court refused to analyze the contract's language, and punted a legal question to lay jurors. This Court should correct that fundamental error.

*Second*, Nero emphasizes that the District Court separately found the technical terms "open point," "line-make," and "rights of distribution" to be ambiguous, and directed the jury to determine their exact meaning using parol evidence. Response Br. 24-25. But HMA's interpretation does *not* depend on the precise meaning of each condition precedent. Instead, the text and structure of the contract confirms that—under either side's interpretation—each condition must actually exist for HMA to owe Nero an obligation. Indeed, why else would the parties have selected conditions precedent *unless* they related to HMA's ability to offer Nero open points?

By contrast, Nero argues that the conditions precedent need not coexist. *See, e.g.*, *id.* at 35. That interpretation produces bizarre results. Imagine HMA had received "rights of distribution" in 2009, but then lost those rights in 2010, after which the two other conditions precedent emerged in 2018. Under Nero's theory of

the agreement, *HMA would still owe Nero rights of first refusal* in 2018, when HMA lacked any rights to distribute the new luxury line-make. That is an absurd interpretation. *See* Opening Br. 32, 35. Yet that is the interpretation the District Court's instructions permitted, and which Nero emphasized to the jury:

> [HMA] tried to tell you … for us to prove my clients' claims, *that we would have to prove that all of them existed at the same time*. Well, that's simply not true. It's not what the contract says. It's not what Judge Berger's going to tell you. It's not in the jury instructions. It's not on the verdict form. If that were true, surely it would make its way into one of those documents, but it's not there.

Doc. 307 at 72 (emphasis added); *see id.* at 78-79 (similar).

*Third*, Nero similarly suggests that the need for all three conditions precedent to exist simultaneously only matters under HMA's definitions of the conditions. Response Br. 29. Nero's closing before the jury disproves that argument. Nero told jurors that HMA's subsidiary did not receive rights of distribution until "October 30, 2018" because the agreement "that authorized" HMA's subsidiary "to be the distributor of Genesis motor vehicles" "was to be effective upon licensure from the Florida Department of Highway Safety and Motor Vehicles." Doc. 307 at 15-16. Thus, under Nero's own definition, the "rights of distribution" condition precedent *only* existed after October 2018. This had *nothing* to do with HMA's interpretation of the contractual term "rights of distribution." Instead, purely based on Nero's interpretation of that term, this key condition precedent was never fulfilled until October 30, 2018.

17

Nor did the jury have to exclusively adopt one side's definition for all three preconditions. The jury could pick and choose. *See* Doc. 303 at 11-13 (jury instructions). Indeed, in his closing argument, *Nero essentially adopted HMA's position on the meaning of a line-make*, and told the jury that the Genesis "line-make" was not established until "after" HMA's "license was granted October 30, 2018." Doc. 307 at 15. "[T]hat's when Genesis Motor America could distribute vehicles in Florida as a line-make." *Id*.

This all reinforces *why* Nero so vigorously argued that the three preconditions did not need to coexist to give rise to HMA's obligation. Because Nero pegged one condition in March 2018 and two others in October 2018, Nero could *only* prevail by convincing lay jurors to adopt a bizarre and legally erroneous interpretation of the 2009 agreement.

*Fourth*, Nero highlights snippets of trial testimony suggesting that distributors may sometimes provide prospective dealers letters-of-intent before the distributor receives state licensing. Response Br. 23-24. "[B]*ut the appointment isn't done because of … licensing reasons.*" Doc. 285 at 64-65 (emphasis added). The existence of letters-of-intent does not support Nero's interpretation of Section 10. Section 10 provided Nero conditional "rights of first refusal *to be appointed a*

*dealer*" for two potential open points, not to receive a letter-of-intent promising a future appointment.  Doc. 84-1 at 5 (emphasis added).[5]

### B.    The Court Should Grant HMA Judgment On The Breach Of Contract Claim.

Nero has changed position again:  Now, he says all three conditions coexisted in March 2018.  This Court should grant HMA judgment and reject Nero's latest theory of breach.

By the time this case went to the jury, no one—not Nero, not HMA—argued the "rights of distribution" condition was fulfilled in March 2018.  Indeed, no evidence showed that "rights of distribution" had existed until October 2018.  Opening Br. 37.  The *only* evidence of "rights of distribution" was an agreement which pegged those rights to the Florida DMV awarding a license for the Genesis line-make, which occurred in October 2018.  Doc. 305-16 at 1.  Meanwhile, the trial

---

[5] Because formal appointment is different from a letter-of-intent, HMA's interpretation of Section 10 would not allow HMA to evade its obligation *to appoint* Nero by promising other dealers open points in letters-of-intent, before the other two conditions arose.  Response Br. 23 n.8.  Nor is an open point filled after a distributor issues a tentative letter-of-intent to a prospective dealer, but before appointment occurs.  Until the prospective dealer is appointed, the distributor still wants additional representation in an area.  By contrast, HMA did not want *additional* Genesis representation.  HMA was required to maintain the existing dealer network already representing Genesis vehicles.  HMA created a new dealership in Jacksonville—not in the eight Florida counties—because Jacksonville lacked a "current Hyundai dealer at the time of the [DMV] ruling."  *Id*. at 44 n.16.

19

record also showed that the Genesis line-make did not exist until October 2018.  *See* Opening Br. 37 n.3; Doc. 307 at 15.

Nero's brief confirms that all three conditions precedent did not coexist in March 2018.  Nero does *not* contest HMA's arguments that the evidence exclusively showed that the "rights of distribution" were not granted until October 2018.  *See* Opening Br. 37-39.  Instead, Nero copies-and-pastes the District Court's opinion. Response Br. 27-28.  But the District Court got it wrong.  Don't take HMA's word for it.  Take Nero's.  Nero emphatically argued to the jury that the "rights of distribution" condition was only fulfilled in October 2018:

> You saw … an agreement … that authorized GMA to be the distributor of Genesis motor vehicles. This was signed back in December of 2017, *and it was to be effective upon licensure from the Florida Department of Highway Safety and Motor Vehicles, and you heard that that happened October 30, 2018, within the ten-year period*.
>
> And Ms. Vinayak testified … that those rights were triggered and given, because of the licensure, to GMA within—before 2019. She testified that immediately upon licensure, Genesis became the licensed distributor. *So that happened October 2018.*

Doc. 307 at 15-16 (emphases added).  And Nero similarly argued that the Genesis line-make did not exist until October 2018.  *Id.*  The District Court was simply wrong when it concluded there was evidence these two conditions existed in March 2018.

Nor should this Court penalize HMA for not more clearly raising this argument, either in a Rule 50(a) motion or at the charge conference.  Any blame lies with Nero.  The purpose of a Rule 50(a) motion is to prevent the movant from

20

"sandbagging" the non-moving party. *Nat'l Indus., Inc. v. Sharon Steel Corp.*, 781 F.2d 1545, 1549 (11th Cir. 1986); *Quinn v. Sw. Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979). But Nero sandbagged HMA by shifting his date of alleged breach at the close of evidence. HMA immediately identified the problem: Nero's key evidence of open points was the March 2018 letter. "If the jury finds that the right to distribution and line-make in January of 2019, the open points have to be offered after that." Doc. 297 at 86. That put everyone on notice of the fundamental defect: Nero's new timeline did not add up.

Nero attempts to blame HMA, and says "[t]he record shows that Nero consistently argued" "the breach occurred before the lawsuit was filed in March 2018 and certainly before [DMV] made their decision in July 2018." Response Br. 26. Not true. At the charge conference, Nero's counsel unequivocally stated: "So the actual breach, Your Honor, is January 2019." Doc. 297 at 62. The District Court asked Nero's counsel three separate times: "So January 2019 for the actual breach?" "So before January 2019 is the anticipatory breach?" "So prior to January '19, 2019 was anticipatory?" Nero's answer to the District Court: "Yes." *Id.* at 62-63. At closing, Nero's counsel then argued that two conditions precedent did not arise— and thus, breach did not occur—until October 2018. *See* Doc. 307 at 15-16. And after trial, Nero successfully sought prejudgment interest starting "January 1, 2019,"

because *according to Nero* "at this point a cause of action or breach had accrued." Doc. 317 at 4 (citing the charge conference).

The Court should not reward Nero's gamesmanship, should hold Nero to what he told the District Court and jurors, and should grant HMA judgment as a matter of law based on Nero's own closing argument.

### C.    At A Minimum, The Court Should Grant A New Trial.

The District Court failed to instruct the jury that all three conditions precedent needed to *actually exist* at the same time.  At a minimum, this failure provides an additional reason to grant a new trial.

Nero's closing arguments demonstrate the prejudice HMA suffered from the District Court's refusal to instruct the jury about the contract's meaning.  Nero's counsel repeatedly emphasized that he did not need "to prove that all" of the conditions precedent "existed at the same time."  Doc. 307 at 72.  "It's not what Judge Berger's going to tell you.  It's not in the jury instructions.  It's not on the verdict form."  *Id*.; *see id*. at 78-79 (similar).  Nero's arguments to the jury prove the prejudice HMA suffered, and this Court should grant a new trial.  *See Yun*, 327 F.3d at 1282; *Cutter Lab'ys*, 53 F.3d at 1195; *Miller*, 650 F.2d at 1372.

Nero's responses do not move the needle.  *First*, Nero again argues that HMA needed to object to his closing argument.  Response Br. 31-33.  Wrong again.  The District Court's error was its refusal to give "a requested jury instruction."  *Brink v.*

*Direct Gen. Ins. Co.*, 38 F.4th 917, 923 (11th Cir. 2022). Nero does not dispute that HMA fully preserved its request for an instruction. The fact that Nero highlighted the lack of an instruction merely demonstrated the prejudice HMA suffered from the District Court's error. *See Yun*, 327 F.3d at 1282; *Cutter Lab'ys*, 53 F.3d at 1195; *Miller*, 650 F.2d at 1372.[6] In any event, any objection would have been futile, *Elzubier*, 564 F. App'x at 547, and Nero forfeited this argument by not raising it below, *Howard*, 605 F.3d at 1243-44.

*Second*, Nero simply states that "the great weight of the evidence supports" breach in March 2018. Response Br. 36. But Nero himself told the jury that two conditions precedent—and thus, any breach—did not occur *until October 2018*. Doc. 307 at 15-16. Nor does Nero address the copious evidence suggesting these two conditions did not exist in March 2018, or the District Court's failure to apply the correct standard of review. *See* Opening Br. 45-47.

Nero similarly suggests this Court only orders a new trial "where there is an absolute absence of evidence to support the verdict." Response Br. 38 (quoting *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F.4th 1267, 1273 (11th Cir. 2021)). Not so. That standard applies to a naked challenge to the sufficiency of evidence. *See iControl*, 21 F.4th at 1272-73. When reviewing the prejudice caused by

---

[6] The cases Nero cites involve offending statements in closing arguments, *not* a refusal to provide a jury instruction. *See* Response Br. 33.

erroneous jury instructions, this Court instead asks whether the lack of an "instruction creates a misimpression that requires a correction." *Brink*, 38 F.4th at 924 (cleaned up). Here, there was a misimpression, which this Court should correct.

*Third*, Nero maintains it was enough that HMA could argue "to the jury for its proposed interpretation." Response Br. 35. But in *Brink* this Court rejected that very argument. When a court fails to give a jury instruction, "defense counsel's closing argument" is not enough "to save the Judge from error." *Brink*, 38 F.4th at 925 (internal quotation marks omitted).

## III.  NERO'S ANTICIPATORY BREACH CLAIM IS LEGALLY FLAWED.

If this Court grants any relief on breach of contract, it should also grant HMA judgment on anticipatory breach. Nero declines to defend the sole basis for the District Court's decision—its unsupported reading of Rule 50(b). *See* Opening Br. 53-55. Nor does Nero dispute one of the reasons HMA offers as a basis for granting HMA judgment on anticipatory breach: A promisor cannot be retrospectively liable for anticipatory breach on a conditional obligation that never arose. *See id.* at 53. Thus, if this Court or a jury finds the conditions precedent did not arise, no actual breach occurred, and HMA cannot *also* be liable for anticipatory breach. Because this provides a sufficient enough reason to grant HMA judgment on anticipatory breach, the Court can stop its analysis here.

24

Nero disputes only a second and separate reason for removing the anticipatory breach claim from this case: The hornbook rule that "the doctrine of anticipatory breach does not apply to a unilateral" obligation. *Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 600 (Fla. Dist. Ct. App. 2019). That rule clearly applies here. By March 2018, only HMA had any outstanding obligations: If the three conditions precedent occurred, HMA had to offer Nero rights of first refusal. This was a unilateral obligation which HMA could not anticipatorily breach. None of Nero's trivial arguments contain merit.

*First*, Nero claims no legal "authority" proves that the 2009 agreement could "convert from [a] bilateral to unilateral contract." Response Br. 49. That is easily disproved. The Second Restatement describes a bilateral contract becoming unilateral, and characterizes that transformation as triggering "one of the established limits on the doctrine of 'anticipatory breach.' " *Restatement (Second) of Contracts* § 253 cmt. c (1981). The First Restatement confirms that anticipatory breach does not apply to a "contract originally bilateral that has become unilateral." *Restatement (First) of Contracts* § 318 (1932). Courts readily acknowledge that bilateral contracts can become unilateral. *See Poinciana Hotel of Miami Beach, Inc. v. Kasden*, 370 So. 2d 399, 401 (Fla. Dist. Ct. App. 1979); *Diamond v. Univ. of S. California*, 89 Cal. Rptr. 302, 305 (Cal. Ct. App. 1970). Nero refuses to engage with blackletter law.

*Second*, Nero suggests (at 48-49) that the 2009 agreement remained bilateral in 2018.  That is inaccurate.  By 2018, Nero had fully performed his obligation to drop his previous lawsuit.  Only HMA had a binding obligation:  If three conditions arose, HMA had to offer open points to Nero.  If HMA extended an offer to Nero, Nero could accept the offer, reject the offer, or remain silent.  After thirty days, HMA could offer the open points to other candidates.  *See* Doc. 84-1 at 11.  But Nero had no obligation to HMA whatsoever.

True, if the three conditions were met, *and* HMA extended rights of first refusal, *and* Nero accepted HMA's offer, the contract would then return to being a bilateral exchange of obligations.  Nero would need to take certain steps, such as securing a facility for a new dealership.  *See* Response Br. 49.  But Nero could *only* have any duty to HMA *after* the three preconditions were met, *after* HMA had extended the rights of first refusal, and *after* Nero accepted HMA's offer.  In other words, the *only* possible scenario in which the contract returned to being bilateral would be if three preconditions were also fulfilled.  Under that scenario, HMA would already have been in breach.  Thus, HMA either actually breached its obligation to Nero.  Or HMA had no obligation to Nero.  There is no middle ground.

*Third*, Nero tries (at 51) to shoehorn this case into the extremely "limited exception" in which a promisee once faced imminent jeopardy and sued for anticipatory breach on a unilateral obligation.  *Haelterman v. Haelterman*, 846 So.

2d 1229, 1230 (Fla. Dist. Ct. App. 2003)  This case is nothing like that "singularly rare fact pattern." *Poinciana Hotel*, 370 So. 2d at 402.  There, the promisor was on the verge of insolvency. *Id.* at 401.  By contrast, here, no one disputes that HMA is fully solvent.  Nero argues the mere fact he "sought specific performance" should constitute imminent jeopardy.  Response Br. 51.  But Nero cannot explain why money damages—the very thing he received below and which he defends on appeal—do not adequately compensate him for breach.

*Poinciana Hotel* itself and subsequent Florida precedent discussing that case cabined the ruling there to its unusual facts.  *See Poinciana Hotel*, 370 So. 2d at 402; *Haelterman*, 846 So. 2d at 1230.  If this Court holds that "specific performance" always constitutes imminent jeopardy, this Court would transform *Poinciana Hotel*'s "singularly rare" exception into the default rule.  *Poinciana Hotel*, 370 So. 2d at 402.  This Court should instead apply Florida law as it stands—not expand it.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment against HMA. Alternatively, this Court should vacate the judgment, and order a new trial limited to Nero's breach and implied covenant claims.

Respectfully submitted,

/s/ Jessica L. Ellsworth
JESSICA L. ELLSWORTH
NATHANIEL A.G. ZELINSKY
EZRA P. LOUVIS
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
jessica.ellsworth@hoganlovells.com

*Counsel for Appellant Hyundai Motor America*

Dated: April 25, 2023

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,473 words, exclusive of those items listed in Fed. R. App. P. 32(f).

2.      This document complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

<u>/s/ Jessica L. Ellsworth</u>

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2023, I caused a copy of the foregoing to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ Jessica L. Ellsworth